## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PRETERM-CLEVELAND** | : | **Case No.** |
| C/O B. JESSIE HILL | : | |
| ACLU of Ohio | : | **Judge:** |
| 4506 Chester Ave. | : | |
| Cleveland, OH 44103 | : | |
| | : | |
| **PLANNED PARENTHOOD** | : | |
| **SOUTHWEST OHIO REGION** | : | |
| C/O Gerhardstein & Branch, LPA | : | **VERIFIED COMPLAINT FOR** |
| 441 Vine Street, Suite 3400 | : | **DECLARATORY AND INJUNCTIVE** |
| Cincinnati, OH 45202 | : | **RELIEF** |
| | : | |
| **SHARON LINER, M.D.** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **PLANNED PARENTHOOD** | : | |
| **GREATER OHIO** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **WOMEN'S MED GROUP** | : | |
| **PROFESSIONAL CORPORATION** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **CAPITAL CARE NETWORK OF** | : | |
| **TOLEDO** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| **vs.** | : | |
| | : | |
| **DAVID YOST** | : | |
| **Attorney General of Ohio** | : | |
| 30 E. Broad Street, 14th Floor | : | |

Columbus, OH 43215      :
:

**AMY ACTON**      :
**Director, Ohio Department of Health**      :
246 N. High Street      :
Columbus, OH 43215      :
:

**KIM G. ROTHERMEL, M.D.**      :
**Secretary, State Medical Board of Ohio**      :
30 East Broad Street, 3rd Floor      :
Columbus, OH 43215      :
:

**BRUCE R. SAFERIN, D.P.M.**      :
**Supervising Member, State Medical**      :
**Board of Ohio**      :
30 East Broad Street, 3rd Floor      :
Columbus, OH 43215      :
:

**MICHAEL C. O'MALLEY**      :
**Cuyahoga County Prosecutor**      :
Justice Center Bld. Floor 8th and 9th      :
1200 Ontario Street      :
Cleveland, OH 44113      :
:

**JOSEPH T. DETERS**      :
**Hamilton County Prosecutor**      :
230 E. Ninth Street, Suite 4000      :
Cincinnati, OH 45202      :
:

**RONALD O'BRIEN**      :
**Franklin County Prosecutor**      :
373 S. High Street, 14th Floor      :
Columbus, OH 43215      :
:

**GARY BISHOP**      :
**Richland County Prosecutor**      :
38 South Park Street      :
Mansfield, OH 44902      :
:

**PAUL J. GAINS**      :
**Mahoning County Prosecutor**      :
21 W. Boardman Street, 6th Floor      :
Youngstown, OH 44503      :
:

**MATHIAS HECK, JR.**      :
**Montgomery County Prosecutor**      :

301 W. Third St.                  **:**
P.O. Box 972                 **:**
Dayton, OH 45402         **:**
                                    **:**

**JULIA R. BATES**         **:**
**Lucas County Prosecutor**   **:**
700 Adams Street, Suite 250   **:**
Toledo, OH 43604         **:**
                                      **:**
                                      **:**
              **Defendants.**       **:**
                                      **:**

## VERIFIED COMPLAINT

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following:

## INTRODUCTION

1.    This is a constitutional challenge, under 42 U.S.C. § 1983, to Senate Bill 23, 133rd Gen. Assemb. (hereinafter "the Ban"), attached as Exhibit A.

2.    For over forty-six years, U.S. law has recognized the fundamental federal constitutional right to make the profoundly important and personal decision whether or not to terminate a pregnancy.  The U.S. Supreme Court has repeatedly recognized that this right is central to obtaining equality and respecting the dignity, autonomy, and bodily integrity of all individuals.

3.    The decision to terminate a pregnancy is informed by a combination of diverse, complex, and interrelated factors that are intimately related to the individual's values and beliefs, culture and religion, health status and reproductive history, familial situation, and resources and

economic stability. In direct conflict with *Roe v. Wade*, 410 U.S. 113 (1973), and more than four decades of precedent affirming *Roe*'s central holding, the Ban criminalizes almost all pre-viability abortions. Specifically, the Ban makes it a crime to perform an abortion after detection of cardiac activity, which generally occurs around six weeks in pregnancy, when many women[1] are unaware they are pregnant. In so doing, the Ban prohibits approximately 90% of abortions currently performed in Ohio and violates Plaintiffs' patients' rights guaranteed by the Fourteenth Amendment to the U.S. Constitution.

4. The Ohio Legislature passed the Ban on April 10, 2019, and Governor DeWine signed the Ban on April 11, 2019. If the Ban takes effect as scheduled on July 10, 2019, it will instantly criminalize the performance of almost all abortions in Ohio. Governor DeWine acknowledged that the Ban is blatantly unconstitutional and has stated that the Ban is an opportunity to advocate for "reversal of existing legal precedents."[2]

5. Unless this Court grants a temporary restraining order or preliminary injunction, and later a permanent injunction, Plaintiffs will be forced to turn away patients seeking abortion care. This is a direct violation of Plaintiffs' patients' fundamental constitutional right to decide whether to have an abortion prior to viability, and causes those patients irreparable harm.

---

[1] Plaintiffs use "woman" or "women" in this complaint as a short-hand for people who are or may become pregnant, but note that people of all gender identities, including gender non-conforming people and transgender men, may also become pregnant and seek abortion services and would thus also suffer irreparable harm as a result of the Ban.

[2] *Ohio Gov. Mike DeWine Signs Ban on Abortion After 1st Heartbeat*, Associated Press (Apr. 12, 2019), https://www.apnews.com/0b1deb8c1f5d41d8ab4c9e32446a55ce. Similarly, S.B. 23's sponsor in the Senate acknowledged that, if upheld, S.B. 23 would create "a new standard" for determining an abortion restriction's constitutionality. Talia Kaplan, *Ohio "Heartbeat" Abortion Ban Passes Senate as Governor Vows to Sign It*, Fox News (Mar. 14, 2019), https://www.foxnews.com/faith-values/ohio-heartbeat-abortion-ban-closer-to-becoming-law.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

7.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

8.      Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occur in this judicial district.

## PLAINTIFFS

9.      Plaintiff Preterm-Cleveland ("Preterm"), a nonprofit corporation organized under the laws of the State of Ohio, has operated a reproductive health care clinic in Cleveland, Ohio since 1974.  Preterm provides a wide range of reproductive and sexual health care services.  The abortion providers at Preterm are threatened with criminal penalties, loss of their medical licenses, civil forfeiture, and civil suits if they violate the Ban.  Preterm sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

10.      Plaintiff Planned Parenthood Southwest Ohio Region ("PPSWO") is a nonprofit corporation organized under the laws of the State of Ohio.  PPSWO and its predecessor organizations have provided a broad range of high-quality reproductive health care to patients in southwest Ohio since 1929.  PPSWO's surgery center, located in Cincinnati, provides abortion services.  The abortion providers at PPSWO are threatened with criminal penalties, loss of their medical licenses, civil forfeiture, and civil suits if they violate the Ban.  PPSWO sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

11.      Plaintiff Sharon Liner, M.D., is a physician licensed to practice medicine in Ohio with fifteen years of experience in women's healthcare.  Dr. Liner is PPSWO's Medical

Director, and in that role she supervises physicians providing abortions, develops PPSWO's policies and procedures, and provides health care services including abortion. Dr. Liner has been providing abortions since 2002. She sues on her own behalf and on behalf of her patients.

12. Plaintiff Planned Parenthood of Greater Ohio ("PPGOH") is a nonprofit corporation organized under the laws of the State of Ohio. PPGOH was formed in 2012 through a merger of several local and regional Planned Parenthood affiliates that had served patients in Ohio for decades. PPGOH serves patients in northern, eastern, and central Ohio. Four PPGOH health centers, located in East Columbus, Bedford Heights, Mansfield, and Youngstown, provide abortion services. The Mansfield and Youngstown health centers provide only medication abortion services. The abortion providers at PPGOH are threatened with criminal penalties, loss of their medical licenses, civil forfeiture, and civil suits if they violate the Ban. PPGOH sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

13. Plaintiff Women's Med Group Professional Corporation ("WMGPC") owns and operates Women's Med Center of Dayton ("WMCD") in Kettering, Ohio. WMGPC and its predecessors have been providing abortions in the Dayton area since 1975. The abortion providers at WMCD are threatened with criminal penalties, loss of their medical licenses, civil forfeiture, and civil suits if they violate the Ban. WMGPC sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

14. Plaintiff Capital Care Network of Toledo ("CCNT"), a corporation organized under the laws of the State of Ohio, has operated a health care clinic in Toledo, Ohio since 2007. The abortion providers at CCNT are threatened with criminal penalties, loss of their medical licenses, civil forfeiture, and civil suits if they violate the Ban. CCNT sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

15.     Plaintiffs provide medication abortion, surgical abortion, or both medication and surgical abortion at and after six weeks from the first day of the patient's last menstrual period ("LMP").  In accordance with Ohio law, no Plaintiffs provide abortion care at or after twenty weeks post-fertilization (twenty-two weeks LMP).  Ohio Rev. Code § 2919.201.

**DEFENDANTS**

16.     Defendant David Yost is the Attorney General of the State of Ohio. He is responsible for the enforcement of all laws, including the Ban.  Under the Ban, he is also charged with commencing and prosecuting civil forfeiture when directed to do so by the State Medical Board.  S.B. 23 § 1, amending Ohio Rev. Code § 2919.1912(B).  He is sued in his official capacity.

17.     Defendant Amy Acton, M.D., M.P.H., is the Director of the Ohio Department of Health ("ODH"), which is responsible for promulgating rules to assist in compliance with the Ban, including rules governing the process for determining whether a fetal heartbeat exists and rules dictating reporting requirements.  She is charged with administering ODH.  She is sued in her official capacity.

18.     Defendant Kim G. Rothermel, M.D., is the Secretary of the State Medical Board of Ohio, which is charged with enforcing the physician licensing and civil penalties contained in the Ban.  She is sued in her official capacity.

19.     Defendant Bruce R. Saferin, D.P.M., is the Supervising Member of the State Medical Board of Ohio, which is charged with enforcing the physician licensing and civil penalties contained in the Ban.  He is sued in his official capacity.

20.     Defendant Michael C. O'Malley is the Cuyahoga County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Cuyahoga County, where Preterm's

clinic and PPGOH's Bedford Heights health center are located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

21.     Defendant Joseph T. Deters is the Hamilton County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Hamilton County, where PPSWO's Cincinnati surgery center is located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

22.     Defendant Ronald O'Brien is the Franklin County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Franklin County, where PPGOH's East Columbus health center is located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

23.     Defendant Gary Bishop is the Richland County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Richland County, where PPGOH's Mansfield health center is located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

24.     Defendant Paul G. Gains is the Mahoning County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Mahoning County, where PPGOH's Youngstown health center is located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

25.     Defendant Mathias H. Heck, Jr. is the Montgomery County Prosecutor.  He is responsible for the enforcement of all of the criminal laws in Montgomery County, where WMGPC's WMCD facility is located, including the criminal provisions contained in the Ban.  He is sued in his official capacity.

26.     Defendant Julia R. Bates is the Lucas County Prosecutor.  She is responsible for the enforcement of all of the criminal laws in Lucas County, where CCNT's health center is located, including the criminal provisions contained in the Ban.  She is sued in her official capacity.

## STATUTORY FRAMEWORK

27.     If a pregnancy is in the uterus, Ohio law requires the provider who intends to perform an abortion to determine whether there is cardiac activity.[3]  If there is cardiac activity, the Ban makes it a crime to "caus[e] or abet[] the termination of" the pregnancy.  S.B. 23 § 1, amending Ohio Rev. Code §§ 2919.192(A), 2919.192(B), 2919.195(A).

28.     The Ban has only two very limited exceptions.  The Ban permits abortion after cardiac activity is detected only if the abortion is necessary (1) to prevent the patient's death, or (2) to prevent a "serious risk of the substantial and irreversible impairment of a major bodily function."  S.B. 23 § 1, amending Ohio Rev. Code § 2919.195(B).  "'Serious risk of the substantial and irreversible impairment of a major bodily function' means any medically diagnosed condition that so complicates the pregnancy of the woman as to directly or indirectly cause the substantial and irreversible impairment of a major bodily function."  Ohio Rev. Code § 2919.16(K).  A "medically diagnosed condition that constitutes a 'serious risk of the substantial and irreversible impairment of a major bodily function' includes pre-eclampsia, inevitable abortion, and premature rupture of the membranes," but "does not include a condition related to the woman's mental health."  *Id.*

---

[3] The Ban instructs the Ohio Department of Health to adopt rules "specifying the appropriate methods of performing an examination for the purpose of determining the presence of a fetal heartbeat" within 120 days of the Ban's effective date.  S.B. 23 § 1, amending Ohio Rev. Code § 2919.192.

29.     A violation of the Ban is a fifth-degree felony, punishable by up to one year in prison and a fine of $2,500.  S.B. 23 § 1, amending Ohio Rev. Code § 2919.195(A); Ohio Rev. Code §§ 2929.14(A)(5), 2929.18(A)(3)(e).  In addition to criminal penalties, the state medical board may assess a forfeiture of up to $20,000 for each violation of the Ban, S.B. 23 § 1, amending Ohio Rev. Code § 2919.1912(A), and limit, revoke, or suspend a physician's medical license based on a violation of the Ban, *see* Ohio Rev. Code § 4371.22(B)(10).  The Plaintiff facilities could face criminal penalties and revocation of their ambulatory surgical center license for a violation of the Ban.  A patient may also bring a civil action against a provider who violates the Ban and recover damages in the amount of $10,000 or more.  S.B. 23 § 1, amending Ohio Rev. Code § 2919.199(B)(1).

## **FACTUAL ALLEGATIONS**

30.     In a normally developing embryo, cells that form the basis for development of the heart later in gestation produce activity that can be detected with ultrasound.

31.     Consistent with medical practice, as well as existing law, *see* Ohio Rev. Code § 2919.191(A), Plaintiffs perform an ultrasound to date the pregnancy and to determine whether there is detectable fetal or embryonic cardiac activity.[4]  Ultrasounds can be performed either by placing a transducer on the patient's abdomen or by inserting a probe into the patient's vagina. Many providers, including providers at Plaintiff clinics, use vaginal ultrasound to confirm and date early pregnancy.

---

[4] The embryonic stage of pregnancy lasts from fertilization until approximately eight to ten weeks LMP.  Beginning at about eleven weeks LMP, the embryo becomes a fetus.

32.     Using vaginal ultrasound, cardiac activity is generally detectible beginning at approximately six weeks, zero days LMP.[5]

33.     Ohio law prohibits abortion after viability, except when that abortion is necessary to preserve the pregnant woman's life or health.[6]  Ohio Rev. Code § 2919.17.

34.     Six weeks LMP is a pre-viability point in pregnancy.  At that point, no embryo is capable of surviving outside of the womb.  Thus, the Ban prohibits abortion well before viability.

### A.  A Ban on Abortion at and After Six Weeks LMP Will Practically Eliminate Abortion Care in Ohio

35.     Pregnancy is commonly measured from the first day of a woman's last menstrual period.  A full-term pregnancy is approximately forty weeks LMP.

36.     The menstrual cycle is usually approximately four weeks long, but will vary based on the individual.  Thus, even a woman with highly regular periods would be four weeks pregnant as measured from her last menstrual period when her missed period occurs.  A ban on abortion at and after six weeks would only allow two weeks, at most, for a woman to learn that she is pregnant, decide whether to have an abortion, and to seek and obtain abortion care.

37.     Prior to six weeks LMP, many women have none of the physical indicators of pregnancy.  Many women do not menstruate at regular intervals, or they go long stretches without experiencing a menstrual period.  Menstrual patterns commonly vary with age.  Indeed, it is extremely common for women to have irregular periods at some point in their lives.

---

[5] *See* Thomas Gellhaus, M.D., *ACOG Opposes Fetal Heartbeat Legislation Restricting Women's Legal Right to Abortion*, American Congress of Obstetricians & Gynecologists (Jan. 18, 2017), https://www.acog.org/About-ACOG/News-Room/Statements/2017/ACOG-Opposes-Fetal-Heartbeat-Legislation-Restricting-Womens-Legal-Right-to-Abortion.

[6] Another provision of Ohio law prohibits abortion after twenty weeks post-fertilization, or twenty-two weeks LMP.  Ohio Rev. Code § 2919.201.

Additionally, women may experience bleeding in early pregnancy that can be mistaken for a period.

38.     Further, women who have certain common medical conditions, such as obesity, those who are breastfeeding, or those who use hormonal contraceptives may experience irregular periods and therefore may not recognize a missed period before six weeks LMP.

39.     For all of these reasons, a woman may be six weeks pregnant but not realize she has missed a period, much less consider a missed period unusual or a signal that she may be pregnant.

40.     On top of these biological realities, many patients face logistical obstacles that will make it difficult to obtain an abortion before six weeks in pregnancy.

41.     For example, Ohio law mandates that a patient make two in-person trips to the clinic before obtaining an abortion in order to consent, determine whether there is cardiac activity, and receive state-mandated information.  Ohio Rev. Code § 2317.56.  These visits must be at least twenty-four hours apart.  *Id.*

42.      State law prohibits Medicaid and other public insurance programs, as well as private insurance plans listed on Ohio's federally run insurance exchange, from covering abortion.  Ohio Rev. Code §§ 9.04, 3901.87; Ohio Admin. Code § 5160-17-01.  Thus, patients often need time to gather the resources to pay for the abortion and related costs, as well as to arrange transportation to the clinic, time off from work, and possibly arrange for childcare during appointments.

43.      In addition to completing this two-day process, patients under eighteen must obtain written consent from a parent or a court order from a judge before receiving abortion care.  Ohio Rev. Code § 2919.121.

44.    For all of the reasons stated above, approximately 90% of abortions in Ohio occur after six weeks.

45.    Thus, the Ban will prohibit almost all abortion care in Ohio.

**B.  Impact of Banning Abortion Care in Ohio**

46.    The near-total ban on abortion imposed by S.B. 23 would have a devastating impact on the lives of individuals who want to consider or seek abortion in Ohio.

47.    Approximately one in four women in this country will have an abortion by age forty-five.  A majority of those having abortions (61%) already have at least one child, while most (66%) also plan to have a child or additional children in the future.[7]

48.    Legal abortion is one of the safest medical procedures in the United States and is substantially safer than continuing a pregnancy through to childbirth.  The risk of death associated with childbirth is approximately fourteen times higher than that associated with abortion, and every pregnancy-related complication is more common among women giving birth than among those having abortions.[8]

49.    If a woman is forced to continue a pregnancy against her will, it can pose a risk to her physical, mental, and emotional health, as well as to the stability and well-being of her family, including existing children.

---

[7] *See* Rachel K. Jones & Jenna Jerman, *Population Group Abortion Rates and Lifetime Incidence of Abortion: United States, 2008-2014*, Guttmacher Institute (Oct. 2017), https://www.guttmacher.org/article/2017/10/population-group-abortion-rates-and-lifetime-incidence-abortion-united-states-2008; *Concern for Current and Future Children a Key Reason Women Have Abortions*, Guttmacher Institute (Jan. 7, 2008), https://www.guttmacher.org/news-release/2008/concern-current-and-future-children-key-reason-women-have-abortions; *Abortion Facts*, National Abortion Federation, https://prochoice.org/education-and-advocacy/about-abortion/abortion-facts/.

[8] Elizabeth Raymond & David Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215, 215 (Feb. 2012).

50.     A child can place economic and emotional strain on a family and may interfere with an individual's life goals.  As most patients who seek abortion already have at least one child, families must consider how an additional child will impact their ability to care for the children they already have.

51.     Even for someone who is otherwise healthy and has an uncomplicated pregnancy, carrying that pregnancy to term and giving birth poses serious medical risk and can have long-term medical and physical consequences.  For a woman with a medical condition caused or exacerbated by pregnancy or for a woman who learns that her fetus has been diagnosed with a severe or lethal anomaly, these risks are increased.

52.     Pregnancy, childbirth, and an additional child may exacerbate an already difficult situation for those who have suffered trauma, such as sexual assault or domestic violence.

53.     If a woman is forced to continue a pregnancy against her will, it can pose a risk to her physical, mental, and emotional health, as well as to the stability and wellbeing of her family, including existing children.

54.     S.B. 23 will have a disproportionate impact on the lives of Black people, other people of color, and people with low incomes in Ohio.

55.     Statistics show that in 2017, Black people made up only 12.9% of Ohio's population but 40% of people who obtained abortions in Ohio; Indigenous (American Indian) people and other people of color (Asian/Pacific Islander, Multiracial, and Hispanic people) made up 8.8% of the population, but 11.9% of the people that obtain abortions.[9]

---

[9] *Induced Abortions in Ohio*, Ohio Dep't of Health (2017), https://odh.ohio.gov/wps/portal/gov/odh/know-our-programs/vital-statistics/resources/vs-abortionreport2017; *Quick Facts: Ohio*, U.S. Census Bureau, https://www.census.gov/quickfacts/oh.

56.     Were the Ban to go into effect, Black people are likely to suffer some of the gravest consequences.  Recent statistics from the U.S. Centers for Disease Control and Prevention show that Black women are three times more likely than White women to die of causes related to pregnancy.[10]  In Ohio, Black infants are three times more likely than their White counterparts to die before their first birthday.[11]

57.     A large majority of patients who obtain abortion care in Ohio are low income.

58.     Absent an injunction, Plaintiffs will have no choice but to turn away patients in need of abortion care.  Ohioans well-being and dignity would suffer irreparably.  The Ban violates the constitutional rights of Plaintiffs' patients and irreparably harms them.

## CLAIMS FOR RELIEF

### COUNT I

(Substantive Due Process)

59.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 58.

60.     By prohibiting abortion prior to viability, the Ban violates Ohioans' right to privacy guaranteed by the Fourteenth Amendment to the U.S. Constitution.

61.     If the Ban is allowed to take effect, Plaintiffs' patients will be subject to irreparable harm for which no adequate remedy at law exists by preventing Plaintiffs' patients

---

[10] Emily E. Petersen et al., *Vital Signs*: *Pregnancy-Related Deaths, United States, 2011-2015, and Strategies for Prevention, 13 States, 2013-2017*, 68 Morbidity & Mortality Weekly Rep. 423 (May 10, 2019),
https://www.cdc.gov/mmwr/volumes/68/wr/mm6818e1.htm?s_cid=mm6818e1_w.

[11] *Ohio Infant Deaths in 2017 Second-Lowest on Record While Racial Disparities in Birth Outcomes Continued*, Ohio Dep't of Health (Dec. 6, 2018),
https://odh.ohio.gov/wps/portal/gov/odh/media-center/odh-news-releases/2017-ohio-infant-mortality-report.

from obtaining an abortion in Ohio, thereby causing them to suffer significant constitutional, medical, emotional, and other harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A.     To immediately issue a temporary restraining order and/or preliminary injunction, and later a permanent injunction, restraining Defendants, their employees, agents, and successors in office from enforcing the Ban.

B.     To enter a judgment declaring that the Ban violates the Fourteenth Amendment to the U.S. Constitution.

C.     To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D.     To grant such other and further relief as the Court deems just and proper.

Dated: May 15, 2019

Respectfully Submitted,

/s/ B. Jessie Hill**
B. Jessie Hill #0074770, *Trial Attorney*
Freda J. Levenson #0045916
American Civil Liberties Union of Ohio,
Foundation, Inc.
4506 Chester Ave.
Cleveland, OH 44103
(216) 368-0553 – Jessie Hill
(614) 586-1972 x 125 – Freda Levenson
(614) 586-1974 (fax)
bjh11@cwru.edu
flevenson@acluohio.org
*Counsel for Plaintiff Preterm-Cleveland*

Elizabeth Watson*
Rachel Reeves*
Brigitte Amiri*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
(212) 549-2650 (fax)
ewatson@aclu.org
rreeves@aclu.org
bamiri@aclu.org
*Counsel for Plaintiff Preterm-Cleveland*

Richard Muniz*
Planned Parenthood Federation of America
1110 Vermont Ave NW, Suite 300
Washington, DC 20005
(202) 973-4800
(202) 296-3480 (fax)
richard.muniz@ppfa.org
*Counsel for Plaintiffs Planned Parenthood*
*Southwest Ohio Region, Planned*
*Parenthood of Greater Ohio, and Sharon*
*Liner, M.D.*

Jennifer L. Branch # 0038893
Alphonse A. Gerhardstein # 0032053
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
(513) 621-9100
(513) 345-5543 (fax)
agerhardstein@gbfirm.com
jbranch@gbfirm.com
*Counsel for Plaintiffs Planned*
*Parenthood Southwest Ohio Region,*
*Planned Parenthood of Greater Ohio,*
*Sharon Liner, M.D., Women's Med Group*
*Professional Corporation and Capital*
*Care Network of Toledo*

Melissa Cohen*
Planned Parenthood Federation of America
123 William Street, Floor 9
New York, NY 10038
(212) 541-7800
(212) 247-6811 (fax)
melissa.cohen@ppfa.org
*Counsel for Plaintiffs Planned Parenthood*
*Southwest Ohio Region, Planned*
*Parenthood Greater of Ohio, and Sharon*
*Liner, M.D.*

*\*Applications for admission pro hac vice*
*forthcoming*

*\*\* Cooperating Counsel for the ACLU of*
*Ohio Foundation*

17

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint are true and correct to the best of my knowledge and belief.

Sharon Liner, MD
Planned Parenthood Southwest Ohio

Executed on Date: 5/14/19

18

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Preterm-Cleveland are true and correct to the best of my knowledge and belief.

_Chrisse France_

Chrisse France
Executive Director
Preterm-Cleveland

Executed on Date: ___5/14/2019___

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Planned Parenthood Southwest Ohio Region are true and correct to the best of my knowledge and belief.

Sharon Liner, M.D.
Planned Parenthood Southwest Ohio

Executed on Date: 5/14/19

## **DECLARATION**

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Planned Parenthood of Greater Ohio are true and correct to the best of my knowledge and belief.

Iris E. Harvey, Ed.S., MBA
President & CEO
Planned Parenthood of Greater Ohio

Executed on Date: _May 13, 2019_

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Women's Med Group Professional Corporation are true and correct to the best of my knowledge and belief.

W. M. Martin Haskell, M.D.
Women's Med Group Professional Corporation

Executed on Date: _14 MAY 2019_

## **DECLARATION**

I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Capital Care Network of Toledo are true and correct to the best of my knowledge and belief.

Terrie Hubbard, CEO
Capital Care Network of Toledo

Executed on Date: __5/15/19__

23