# EXHIBIT A

(133rd General Assembly)
(Substitute Senate Bill Number 23)

# AN ACT

To amend sections 2317.56, 2919.171, 2919.19, 2919.191, 2919.192, 2919.193, and
4731.22; to amend, for the purpose of adopting new section numbers as indicated
in parentheses, sections 2919.191 (2919.192), 2919.192 (2919.194), and
2919.193 (2919.198); and to enact new sections 2919.191 and 2919.193 and
sections 2919.195, 2919.196, 2919.197, 2919.199, 2919.1910, 2919.1912,
2919.1913, and 5103.11 of the Revised Code to enact the Human Rights and
Heartbeat Protection Act.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 2317.56, 2919.171, 2919.19, 2919.191, 2919.192, 2919.193, and
4731.22 be amended; sections 2919.191 (2919.192), 2919.192 (2919.194), and 2919.193 (2919.198)
be amended for the purpose of adopting new section numbers as shown in parentheses; and new
sections 2919.191 and 2919.193 and sections 2919.195, 2919.196, 2919.197, 2919.199, 2919.1910,
2919.1912, 2919.1913, and 5103.11 of the Revised Code be enacted to read as follows:

Sec. 2317.56. (A) As used in this section:

(1) "Medical emergency" has the same meaning as in section 2919.16 of the Revised Code.

(2) "Medical necessity" means a medical condition of a pregnant woman that, in the
reasonable judgment of the physician who is attending the woman, so complicates the pregnancy that
it necessitates the immediate performance or inducement of an abortion.

(3) "Probable gestational age of the embryo or fetus" means the gestational age that, in the
judgment of a physician, is, with reasonable probability, the gestational age of the embryo or fetus at
the time that the physician informs a pregnant woman pursuant to division (B)(1)(b) of this section.

(B) Except when there is a medical emergency or medical necessity, an abortion shall be
performed or induced only if all of the following conditions are satisfied:

(1) At least twenty-four hours prior to the performance or inducement of the abortion, a
physician meets with the pregnant woman in person in an individual, private setting and gives her an
adequate opportunity to ask questions about the abortion that will be performed or induced. At this
meeting, the physician shall inform the pregnant woman, verbally or, if she is hearing impaired, by
other means of communication, of all of the following:

(a) The nature and purpose of the particular abortion procedure to be used and the medical
risks associated with that procedure;

(b) The probable gestational age of the embryo or fetus;

(c) The medical risks associated with the pregnant woman carrying the pregnancy to term.

The meeting need not occur at the facility where the abortion is to be performed or induced,
and the physician involved in the meeting need not be affiliated with that facility or with the

physician who is scheduled to perform or induce the abortion.

(2) At least twenty-four hours prior to the performance or inducement of the abortion, the physician who is to perform or induce the abortion or the physician's agent does each of the following in person, by telephone, by certified mail, return receipt requested, or by regular mail evidenced by a certificate of mailing:

(a) Inform the pregnant woman of the name of the physician who is scheduled to perform or induce the abortion;

(b) Give the pregnant woman copies of the published materials described in division (C) of this section;

(c) Inform the pregnant woman that the materials given pursuant to division (B)(2)(b) of this section are published by the state and that they describe the embryo or fetus and list agencies that offer alternatives to abortion. The pregnant woman may choose to examine or not to examine the materials. A physician or an agent of a physician may choose to be disassociated from the materials and may choose to comment or not comment on the materials.

(3) If it has been determined that the unborn human individual the pregnant woman is carrying has a detectable fetal heartbeat, the physician who is to perform or induce the abortion shall comply with the informed consent requirements in section ~~2919.192~~ 2919.194 of the Revised Code in addition to complying with the informed consent requirements in divisions (B)(1), (2), (4), and (5) of this section.

(4) Prior to the performance or inducement of the abortion, the pregnant woman signs a form consenting to the abortion and certifies both of the following on that form:

(a) She has received the information and materials described in divisions (B)(1) and (2) of this section, and her questions about the abortion that will be performed or induced have been answered in a satisfactory manner.

(b) She consents to the particular abortion voluntarily, knowingly, intelligently, and without coercion by any person, and she is not under the influence of any drug of abuse or alcohol.

The form shall contain the name and contact information of the physician who provided to the pregnant woman the information described in division (B)(1) of this section.

(5) Prior to the performance or inducement of the abortion, the physician who is scheduled to perform or induce the abortion or the physician's agent receives a copy of the pregnant woman's signed form on which she consents to the abortion and that includes the certification required by division (B)(4) of this section.

(C) The department of health shall publish in English and in Spanish, in a typeface large enough to be clearly legible, and in an easily comprehensible format, the following materials on the department's web site:

(1) Materials that inform the pregnant woman about family planning information, of publicly funded agencies that are available to assist in family planning, and of public and private agencies and services that are available to assist her through the pregnancy, upon childbirth, and while the child is dependent, including, but not limited to, adoption agencies. The materials shall be geographically indexed; include a comprehensive list of the available agencies, a description of the services offered by the agencies, and the telephone numbers and addresses of the agencies; and inform the pregnant woman about available medical assistance benefits for prenatal care, childbirth, and neonatal care

and about the support obligations of the father of a child who is born alive. The department shall ensure that the materials described in division (C)(1) of this section are comprehensive and do not directly or indirectly promote, exclude, or discourage the use of any agency or service described in this division.

(2) Materials that inform the pregnant woman of the probable anatomical and physiological characteristics of the zygote, blastocyte, embryo, or fetus at two-week gestational increments for the first sixteen weeks of pregnancy and at four-week gestational increments from the seventeenth week of pregnancy to full term, including any relevant information regarding the time at which the fetus possibly would be viable. The department shall cause these materials to be published only after it consults with the Ohio state medical association and the Ohio section of the American college of obstetricians and gynecologists independent health care experts relative to the probable anatomical and physiological characteristics of a zygote, blastocyte, embryo, or fetus at the various gestational increments. The materials shall use language that is understandable by the average person who is not medically trained, shall be objective and nonjudgmental, and shall include only accurate scientific information about the zygote, blastocyte, embryo, or fetus at the various gestational increments. If the materials use a pictorial, photographic, or other depiction to provide information regarding the zygote, blastocyte, embryo, or fetus, the materials shall include, in a conspicuous manner, a scale or other explanation that is understandable by the average person and that can be used to determine the actual size of the zygote, blastocyte, embryo, or fetus at a particular gestational increment as contrasted with the depicted size of the zygote, blastocyte, embryo, or fetus at that gestational increment.

(D) Upon the submission of a request to the department of health by any person, hospital, physician, or medical facility for one copy of the materials published in accordance with division (C) of this section, the department shall make the requested copy of the materials available to the person, hospital, physician, or medical facility that requested the copy.

(E) If a medical emergency or medical necessity compels the performance or inducement of an abortion, the physician who will perform or induce the abortion, prior to its performance or inducement if possible, shall inform the pregnant woman of the medical indications supporting the physician's judgment that an immediate abortion is necessary. Any physician who performs or induces an abortion without the prior satisfaction of the conditions specified in division (B) of this section because of a medical emergency or medical necessity shall enter the reasons for the conclusion that a medical emergency or medical necessity exists in the medical record of the pregnant woman.

(F) If the conditions specified in division (B) of this section are satisfied, consent to an abortion shall be presumed to be valid and effective.

(G) The performance or inducement of an abortion without the prior satisfaction of the conditions specified in division (B) of this section does not constitute, and shall not be construed as constituting, a violation of division (A) of section 2919.12 of the Revised Code. The failure of a physician to satisfy the conditions of division (B) of this section prior to performing or inducing an abortion upon a pregnant woman may be the basis of both of the following:

(1) A civil action for compensatory and exemplary damages as described in division (H) of this section;

Sub. S. B. No. 23                                                                  133rd G.A.

4

(2) Disciplinary action under section 4731.22 of the Revised Code.

(H)(1) Subject to divisions (H)(2) and (3) of this section, any physician who performs or induces an abortion with actual knowledge that the conditions specified in division (B) of this section have not been satisfied or with a heedless indifference as to whether those conditions have been satisfied is liable in compensatory and exemplary damages in a civil action to any person, or the representative of the estate of any person, who sustains injury, death, or loss to person or property as a result of the failure to satisfy those conditions. In the civil action, the court additionally may enter any injunctive or other equitable relief that it considers appropriate.

(2) The following shall be affirmative defenses in a civil action authorized by division (H)(1) of this section:

(a) The physician performed or induced the abortion under the circumstances described in division (E) of this section.

(b) The physician made a good faith effort to satisfy the conditions specified in division (B) of this section.

(3) An employer or other principal is not liable in damages in a civil action authorized by division (H)(1) of this section on the basis of the doctrine of respondeat superior unless either of the following applies:

(a) The employer or other principal had actual knowledge or, by the exercise of reasonable diligence, should have known that an employee or agent performed or induced an abortion with actual knowledge that the conditions specified in division (B) of this section had not been satisfied or with a heedless indifference as to whether those conditions had been satisfied.

(b) The employer or other principal negligently failed to secure the compliance of an employee or agent with division (B) of this section.

(4) Notwithstanding division (E) of section 2919.12 of the Revised Code, the civil action authorized by division (H)(1) of this section shall be the exclusive civil remedy for persons, or the representatives of estates of persons, who allegedly sustain injury, death, or loss to person or property as a result of a failure to satisfy the conditions specified in division (B) of this section.

(I) The department of job and family services shall prepare and conduct a public information program to inform women of all available governmental programs and agencies that provide services or assistance for family planning, prenatal care, child care, or alternatives to abortion.

Sec. 2919.171. (A)(1) A physician who performs or induces or attempts to perform or induce an abortion on a pregnant woman shall submit a report to the department of health in accordance with the forms, rules, and regulations adopted by the department that includes all of the information the physician is required to certify in writing or determine under ~~sections~~ section 2919.17 ~~and~~ , section 2919.18, divisions (A) and (C) of section 2919.192, division (C) of section 2919.193, division (B) of section 2919.195, or division (A) of section 2919.196 of the Revised Code~~.~~ .

(2) If a person other than the physician described in division (A)(1) of this section makes or maintains a record required by sections 2919.192 to 2919.196 of the Revised Code on the physician's behalf or at the physician's direction, that person shall comply with the reporting requirement described in division (A)(1) of this section as if the person were the physician described in that division.

(B) By September 30 of each year, the department of health shall issue a public report that

provides statistics for the previous calendar year compiled from all of the reports covering that calendar year submitted to the department in accordance with this section for each of the items listed in division (A) of this section. The report shall also provide the statistics for each previous calendar year in which a report was filed with the department pursuant to this section, adjusted to reflect any additional information that a physician provides to the department in a late or corrected report. The department shall ensure that none of the information included in the report could reasonably lead to the identification of any pregnant woman upon whom an abortion is performed.

(C)(1) The physician shall submit the report described in division (A) of this section to the department of health within fifteen days after the woman is discharged. If the physician fails to submit the report more than thirty days after that fifteen-day deadline, the physician shall be subject to a late fee of five hundred dollars for each additional thirty-day period or portion of a thirty-day period the report is overdue. A physician who is required to submit to the department of health a report under division (A) of this section and who has not submitted a report or has submitted an incomplete report more than one year following the fifteen-day deadline may, in an action brought by the department of health, be directed by a court of competent jurisdiction to submit a complete report to the department of health within a period of time stated in a court order or be subject to contempt of court.

(2) If a physician fails to comply with the requirements of this section, other than filing a late report with the department of health, or fails to submit a complete report to the department of health in accordance with a court order, the physician is subject to division (B)(44) of section 4731.22 of the Revised Code.

(3) No person shall falsify any report required under this section. Whoever violates this division is guilty of abortion report falsification, a misdemeanor of the first degree.

(D) ~~Within ninety days of October 20, 2011, the~~ The department of health shall adopt rules pursuant to section 111.15 of the Revised Code to assist in compliance with this section.

Sec. 2919.19. (A) As used in this section and sections 2919.191 to ~~2919.193~~ 2919.1910 of the Revised Code:

~~(A)~~ (1) "Conception" means fertilization.

(2) "Contraceptive" means a drug, device, or chemical that prevents conception.

(3) "DNA" means deoxyribonucleic acid.

(4) "Fetal heartbeat" means cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac.

~~(B)~~ (5) "Fetus" means the human offspring developing during pregnancy from the moment of conception and includes the embryonic stage of development.

~~(C)~~ (6) "Gestational age" means the age of an unborn human individual as calculated from the first day of the last menstrual period of a pregnant woman.

~~(D)~~ (7) "Gestational sac" means the structure that comprises the extraembryonic membranes that envelop the fetus and that is typically visible by ultrasound after the fourth week of pregnancy.

~~(E)~~ (8) "Intrauterine pregnancy" means a pregnancy in which the fetus is attached to the placenta within the uterus of the pregnant woman.

(9) "Medical emergency" has the same meaning as in section 2919.16 of the Revised Code.

~~(F)~~ (10) "Physician" has the same meaning as in section 2305.113 of the Revised Code.

Sub. S. B. No. 23                                                            133rd G.A.

6

(G) (11) "Pregnancy" means the human female reproductive condition that begins with fertilization, when the woman is carrying the developing human offspring, and that is calculated from the first day of the last menstrual period of the woman.

(H) (12) "Serious risk of the substantial and irreversible impairment of a major bodily function" has the same meaning as in section 2919.16 of the Revised Code.

(I) (13) "Spontaneous miscarriage" means the natural or accidental termination of a pregnancy and the expulsion of the fetus, typically caused by genetic defects in the fetus or physical abnormalities in the pregnant woman.

(14) "Standard medical practice" means the degree of skill, care, and diligence that a physician of the same medical specialty would employ in like circumstances. As applied to the method used to determine the presence of a fetal heartbeat for purposes of section 2919.191 2919.192 of the Revised Code, "standard medical practice" includes employing the appropriate means of detection depending on the estimated gestational age of the fetus and the condition of the woman and her pregnancy.

(J) (15) "Unborn human individual" means an individual organism of the species homo sapiens from fertilization until live birth.

(B)(1) It is the intent of the general assembly that a court judgment or order suspending enforcement of any provision of this section or sections 2919.171 or 2919.191 to 2919.1913 of the Revised Code is not to be regarded as tantamount to repeal of that provision.

(2) Upon the issuance of any court order or judgment restoring, expanding, or clarifying the authority of states to prohibit or regulate abortion entirely or in part, or the effective date of an amendment to the United States Constitution restoring, expanding, or clarifying the authority of states to prohibit or regulate abortion entirely or in part, the attorney general may apply to the pertinent state or federal court for either or both of the following:

(a) A declaration that any one or more sections specified in division (B)(1) of this section are constitutional;

(b) A judgment or order lifting an injunction against the enforcement of any one or more sections specified in division (B)(1) of this section.

(3) If the attorney general fails to apply for the relief described in division (B)(2) of this section within the thirty-day period after an event described in that division occurs, any county prosecutor, with standing, may apply to the appropriate state or federal court for such relief.

(4) If any provision of this section or sections 2919.171 or 2919.191 to 2919.1913 of the Revised Code is held invalid, or if the application of such provision to any person or circumstance is held invalid, the invalidity of that provision does not affect any other provisions or applications of this section and sections 2919.171 and 2919.191 to 2919.1913 of the Revised Code that can be given effect without the invalid provision or application, and to this end the provisions of this section and sections 2919.171 and 2919.191 to 2919.1913 of the Revised Code are severable as provided in section 1.50 of the Revised Code. In particular, it is the intent of the general assembly that any invalidity or potential invalidity of a provision of this section or sections 2919.171 or 2919.191 to 2919.1913 of the Revised Code is not to impair the immediate and continuing enforceability of the remaining provisions. It is furthermore the intent of the general assembly that the provisions of this section and sections 2919.171 or 2919.191 to 2919.1913 of the Revised Code are not to have the

Sub. S. B. No. 23                                                                    133rd G.A.

effect of repealing or limiting any other laws of this state, except as specified by this section and sections 2919.171 and 2919.191 to 2919.1913 of the Revised Code.

Sec. 2919.191. Sections 2919.192 to 2919.195 of the Revised Code apply only to intrauterine pregnancies.

Sec. ~~2919.191~~ 2919.192. (A) A person who intends to perform or induce an abortion on a pregnant woman shall determine whether there is a detectable fetal heartbeat of the unborn human individual the pregnant woman is carrying. The method of determining the presence of a fetal heartbeat shall be consistent with the person's good faith understanding of standard medical practice, provided that if rules have been adopted under division ~~(C)~~ (B) of this section, the method chosen shall be one that is consistent with the rules. The person who determines the presence or absence of a fetal heartbeat shall record in the pregnant woman's medical record the estimated gestational age of the unborn human individual, the method used to test for a fetal heartbeat, the date and time of the test, and the results of the test.

~~(B)(1) Except when a medical emergency exists that prevents compliance with this division, no person shall perform or induce an abortion on a pregnant woman prior to determining if the unborn human individual the pregnant woman is carrying has a detectable fetal heartbeat. Any person who performs or induces an abortion on a pregnant woman based on the exception in this division shall note in the pregnant woman's medical records that a medical emergency necessitating the abortion existed and shall also note the medical condition of the pregnant woman that prevented compliance with this division. The person shall maintain a copy of the notes described in this division in the person's own records for at least seven years after the notes are entered into the medical records.~~

~~(2)~~ The person who performs the examination for the presence of a fetal heartbeat shall give the pregnant woman the option to view or hear the fetal heartbeat.

~~(C) The~~ (B) Not later than one hundred twenty days of the effective date of S.B. 23 of the 133rd general assembly, the director of health ~~may promulgate~~ shall adopt rules pursuant to section 111.15 of the Revised Code specifying the appropriate methods of performing an examination for the purpose of determining the presence of a fetal heartbeat of an unborn individual based on standard medical practice. ~~The rules shall require only that an examination shall be performed externally.~~

~~(D)~~ (C) A person is not in violation of division (A) ~~or (B)~~ of this section if that person has performed an examination for the purpose of determining the presence of a fetal heartbeat ~~in the fetus of an unborn human individual~~ utilizing standard medical practice in accordance with rules adopted under division (B) of this section, that examination does not reveal a fetal heartbeat or the person has been informed by a physician who has performed the examination for a fetal heartbeat that the examination did not reveal a fetal heartbeat, and the person notes in the pregnant woman's medical records the procedure utilized to detect the presence of a fetal heartbeat.

~~(E) Except as provided in division (F) of this section, no person shall knowingly and purposefully perform or induce an abortion on a pregnant woman before determining in accordance with division (A) of this section whether the unborn human individual the pregnant woman is carrying has a detectable heartbeat. The failure of a person to satisfy the requirements of this section prior to performing or inducing an abortion on a pregnant woman may be the basis for either of the following:~~

Sub. S. B. No. 23                                                                                   133rd G.A.

8

~~(1) A civil action for compensatory and exemplary damages;~~

~~(2) Disciplinary action under section 4731.22 of the Revised Code.~~

~~(F) Division (E) of this section does not apply to a physician who performs or induces the abortion if the physician believes that a medical emergency exists that prevents compliance with that division.~~

~~(G) The director of health may determine and specify in rules adopted pursuant to section 111.15 of the Revised Code and based upon available medical evidence the statistical probability of bringing an unborn human individual to term based on the gestational age of an unborn human individual who possesses a detectable fetal heartbeat.~~

~~(H) A woman on whom an abortion is performed in violation of division (B) of this section or division (B)(3) of section 2317.56 of the Revised Code may file a civil action for the wrongful death of the woman's unborn child and may receive at the mother's election at any time prior to final judgment damages in an amount equal to ten thousand dollars or an amount determined by the trier of fact after consideration of the evidence subject to the same defenses and requirements of proof, except any requirement of live birth, as would apply to a suit for the wrongful death of a child who had been born alive.~~

Sec. 2919.193. (A) Except as provided in division (B) of this section, no person shall knowingly and purposefully perform or induce an abortion on a pregnant woman before determining in accordance with division (A) of section 2919.192 of the Revised Code whether the unborn human individual the pregnant woman is carrying has a detectable heartbeat.

Whoever violates this division is guilty of performing or inducing an abortion before determining whether there is a detectable fetal heartbeat, a felony of the fifth degree. A violation of this division may also be the basis of either of the following:

(1) A civil action for compensatory and exemplary damages;

(2) Disciplinary action under section 4731.22 of the Revised Code.

(B) Division (A) of this section does not apply to a physician who performs or induces the abortion if the physician believes that a medical emergency, as defined in section 2919.16 of the Revised Code, exists that prevents compliance with that division.

(C) A physician who performs or induces an abortion on a pregnant woman based on the exception in division (B) of this section shall make written notations in the pregnant woman's medical records of both of the following:

(1) The physician's belief that a medical emergency necessitating the abortion existed;

(2) The medical condition of the pregnant woman that assertedly prevented compliance with division (A) of this section.

For at least seven years from the date the notations are made, the physician shall maintain in the physician's own records a copy of the notations.

(D) A person is not in violation of division (A) of this section if the person acts in accordance with division (A) of section 2919.192 of the Revised Code and the method used to determine the presence of a fetal heartbeat does not reveal a fetal heartbeat.

Sec. **2919.192** 2919.194. (A) ~~If~~ Notwithstanding division (A)(3) of this section, if a person who intends to perform or induce an abortion on a pregnant woman has determined, under section ~~2919.191~~ 2919.192 of the Revised Code, that the unborn human individual the pregnant woman is

carrying has a detectable heartbeat, the person shall not, except as provided in division (B) of this section, perform or induce the abortion until without meeting all of the following requirements have been met and without at least twenty-four hours have elapsed elapsing after the last of the requirements is met:

(1) The person intending to perform or induce the abortion shall inform the pregnant woman in writing that the unborn human individual the pregnant woman is carrying has a fetal heartbeat.

(2) The person intending to perform or induce the abortion shall inform the pregnant woman, to the best of the person's knowledge, of the statistical probability of bringing the unborn human individual possessing a detectable fetal heartbeat to term based on the gestational age of the unborn human individual the pregnant woman is carrying or, if the director of health has specified statistical probability information pursuant to rules adopted under division (C) of this section, shall provide to the pregnant woman that information.

(3) The pregnant woman shall sign a form acknowledging that the pregnant woman has received information from the person intending to perform or induce the abortion that the unborn human individual the pregnant woman is carrying has a fetal heartbeat and that the pregnant woman is aware of the statistical probability of bringing the unborn human individual the pregnant woman is carrying to term.

(B) Division (A) of this section does not apply if the person who intends to perform or induce the abortion believes that a medical emergency exists that prevents compliance with that division.

(C) The director of health may adopt rules that specify information regarding the statistical probability of bringing an unborn human individual possessing a detectable heartbeat to term based on the gestational age of the unborn human individual. The rules shall be based on available medical evidence and shall be adopted in accordance with section 111.15 of the Revised Code.

(D) This section does not have the effect of repealing or limiting any other provision of the Revised Code relating to informed consent for an abortion, including the provisions in section 2317.56 of the Revised Code.

(E) Whoever violates division (A) of this section is guilty of performing or inducing an abortion without informed consent when there is a detectable fetal heartbeat, a misdemeanor of the first degree on a first offense and a felony of the fourth degree on each subsequent offense.

Sec. 2919.195. (A) Except as provided in division (B) of this section, no person shall knowingly and purposefully perform or induce an abortion on a pregnant woman with the specific intent of causing or abetting the termination of the life of the unborn human individual the pregnant woman is carrying and whose fetal heartbeat has been detected in accordance with division (A) of section 2919.192 of the Revised Code.

Whoever violates this division is guilty of performing or inducing an abortion after the detection of a fetal heartbeat, a felony of the fifth degree.

(B) Division (A) of this section does not apply to a physician who performs a medical procedure that, in the physician's reasonable medical judgment, is designed or intended to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

A physician who performs a medical procedure as described in this division shall declare, in a written document, that the medical procedure is necessary, to the best of the physician's reasonable

medical judgment, to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman. In the document, the physician shall specify the pregnant woman's medical condition that the medical procedure is asserted to address and the medical rationale for the physician's conclusion that the medical procedure is necessary to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

A physician who performs a medical procedure as described in this division shall place the written document required by this division in the pregnant woman's medical records. The physician shall maintain a copy of the document in the physician's own records for at least seven years from the date the document is created.

(C) A person is not in violation of division (A) of this section if the person acts in accordance with division (A) of section 2919.192 of the Revised Code and the method used to determine the presence of a fetal heartbeat does not reveal a fetal heartbeat.

(D) Division (A) of this section does not have the effect of repealing or limiting any other provision of the Revised Code that restricts or regulates the performance or inducement of an abortion by a particular method or during a particular stage of a pregnancy.

Sec. 2919.196. The provisions of this section are wholly independent of the requirements of sections 2919.192 to 2919.195 of the Revised Code.

(A) A person who performs or induces an abortion on a pregnant woman shall do whichever of the following is applicable:

(1) If a purported reason for the abortion is to preserve the health of the pregnant woman, the person shall specify in a written document the medical condition that the abortion is asserted to address and the medical rationale for the person's conclusion that the abortion is necessary to address that condition.

(2) If division (A)(1) of this section does not apply, the person shall specify in a written document that maternal health is not a reason of the abortion.

(B) The person who specifies the information in the document described in division (A) of this section shall place the document in the pregnant woman's medical records. The person who specifies the information shall maintain a copy of the document in the person's own records for at least seven years from the date the document is created.

Sec. 2919.197. Nothing in sections 2919.19 to 2919.196 of the Revised Code prohibits the sale, use, prescription, or administration of a drug, device, or chemical for contraceptive purposes.

Sec. **2919.193** 2919.198. A pregnant woman on whom an abortion is performed or induced in violation of section 2919.191 or 2919.192 2919.193, 2919.194, or 2919.195 of the Revised Code is not guilty of violating any of those sections; is not guilty of attempting to commit, conspiring to commit, or complicity in committing a violation of any of those sections; and is not subject to a civil penalty based on the abortion being performed or induced in violation of any of those sections.

Sec. 2919.199. (A) A woman who meets either or both of the following criteria may file a civil action for the wrongful death of her unborn child:

(1) A woman on whom an abortion was performed or induced in violation of division (A) of section 2919.193 or division (A) of section 2919.195 of the Revised Code;

(2) A woman on whom an abortion was performed or induced who was not given the

Sub. S. B. No. 23                                                                                                      133rd G.A.

information described in divisions (A)(1) and (2) of section 2919.194 of the Revised Code or who did not sign a form described in division (A)(3) of section 2919.194 of the Revised code.

(B) A woman who prevails in an action filed under division (A) of this section shall receive both of the following from the person who committed the one or more acts described in division (A)(1) or (2) of this section:

(1) Damages in an amount equal to ten thousand dollars or an amount determined by the trier of fact after consideration of the evidence at the mother's election at any time prior to final judgment subject to the same defenses and requirements of proof, except any requirement of live birth, as would apply to a suit for the wrongful death of a child who had been born alive;

(2) Court costs and reasonable attorney's fees.

(C) A determination by a court of record that division (A) of section 2919.193 of the Revised Code, division (A)(1), (2), or (3) of section 2919.194 of the Revised Code, or division (A) of section 2919.195 of the Revised Code is unconstitutional shall be a defense to an action filed under division (A) of this section alleging that the defendant violated the division that was determined to be unconstitutional.

(D) If the defendant in an action filed under division (A) of this section prevails and all of the following apply the court shall award reasonable attorney's fees to the defendant in accordance with section 2323.51 of the Revised Code:

(1) The court finds that the commencement of the action constitutes frivolous conduct, as defined in section 2323.51 of the Revised Code.

(2) The court's finding in division (D)(1) of this section is not based on that court or another court determining that division (A) of section 2919.193 of the Revised Code, division (A)(1), (2), or (3) of section 2919.194 of the Revised Code, or division (A) of section 2919.195 of the Revised Code is unconstitutional.

(3) The court finds that the defendant was adversely affected by the frivolous conduct.

Sec. 2919.1910. (A) To ensure that citizens are informed of available options in this state, there is hereby created the joint legislative committee on adoption promotion and support. The committee may review or study any matter that it considers relevant to the adoption process in this state, with priority given to the study or review of mechanisms intended to increase awareness of the process, increase its effectiveness, or both.

(B) The committee shall consist of three members of the house of representatives appointed by the speaker of the house of representatives and three members of the senate appointed by the president of the senate. Not more than two members appointed by the speaker of the house of representatives and not more than two members appointed by the president of the senate may be of the same political party.

Each member of the committee shall hold office during the general assembly in which the member is appointed and until a successor has been appointed, notwithstanding the adjournment sine die of the general assembly in which the member was appointed or the expiration of the member's term as a member of the general assembly. Any vacancies occurring among the members of the committee shall be filled in the manner of the original appointment.

(C) The committee has the same powers as other standing or select committees of the general assembly.

Sec. 2919.1912. (A) The state medical board may assess against a person a forfeiture of not more than twenty thousand dollars for each separate violation or failure of the person to comply with any of the requirements of sections 2919.171, 2919.192, 2919.193, 2919.194, 2919.195, or 2919.196 of the Revised Code. The board shall comply with the adjudication requirements of Chapter 119. of the Revised Code when assessing the forfeiture. The forfeiture may be in addition to criminal penalties that are imposed under other sections of the Revised Code.

(B) An action to recover a forfeiture shall be prosecuted in the name of the state and shall be brought in the court of common pleas of Franklin county. The action shall be commenced and prosecuted by the attorney general when directed by the board.

(C) Moneys collected under division (A) of this section or recovered by an action under division (B) of this section shall be paid to the treasurer of state for deposit into the foster care and adoption initiatives fund created under section 5103.11 of the Revised Code.

Sec. 2919.1913. Sections 2919.171, 2919.19 to 2919.1913, and 4731.22 of the Revised Code, as amended or enacted by this act, shall be known as the "Human Rights and Heartbeat Protection Act."

Sec. 4731.22. (A) The state medical board, by an affirmative vote of not fewer than six of its members, may limit, revoke, or suspend a license or certificate to practice or certificate to recommend, refuse to grant a license or certificate, refuse to renew a license or certificate, refuse to reinstate a license or certificate, or reprimand or place on probation the holder of a license or certificate if the individual applying for or holding the license or certificate is found by the board to have committed fraud during the administration of the examination for a license or certificate to practice or to have committed fraud, misrepresentation, or deception in applying for, renewing, or securing any license or certificate to practice or certificate to recommend issued by the board.

(B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a license or certificate to practice or certificate to recommend, refuse to issue a license or certificate, refuse to renew a license or certificate, refuse to reinstate a license or certificate, or reprimand or place on probation the holder of a license or certificate for one or more of the following reasons:

(1) Permitting one's name or one's license or certificate to practice to be used by a person, group, or corporation when the individual concerned is not actually directing the treatment given;

(2) Failure to maintain minimal standards applicable to the selection or administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;

(3) Except as provided in section 4731.97 of the Revised Code, selling, giving away, personally furnishing, prescribing, or administering drugs for other than legal and legitimate therapeutic purposes or a plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction of, a violation of any federal or state law regulating the possession, distribution, or use of any drug;

(4) Willfully betraying a professional confidence.

For purposes of this division, "willfully betraying a professional confidence" does not include providing any information, documents, or reports under sections 307.621 to 307.629 of the Revised Code to a child fatality review board; does not include providing any information, documents, or

reports to the director of health pursuant to guidelines established under section 3701.70 of the Revised Code; does not include written notice to a mental health professional under section 4731.62 of the Revised Code; and does not include the making of a report of an employee's use of a drug of abuse, or a report of a condition of an employee other than one involving the use of a drug of abuse, to the employer of the employee as described in division (B) of section 2305.33 of the Revised Code. Nothing in this division affects the immunity from civil liability conferred by section 2305.33 or 4731.62 of the Revised Code upon a physician who makes a report in accordance with section 2305.33 or notifies a mental health professional in accordance with section 4731.62 of the Revised Code. As used in this division, "employee," "employer," and "physician" have the same meanings as in section 2305.33 of the Revised Code.

(5) Making a false, fraudulent, deceptive, or misleading statement in the solicitation of or advertising for patients; in relation to the practice of medicine and surgery, osteopathic medicine and surgery, podiatric medicine and surgery, or a limited branch of medicine; or in securing or attempting to secure any license or certificate to practice issued by the board.

As used in this division, "false, fraudulent, deceptive, or misleading statement" means a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived.

(6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established;

(7) Representing, with the purpose of obtaining compensation or other advantage as personal gain or for any other person, that an incurable disease or injury, or other incurable condition, can be permanently cured;

(8) The obtaining of, or attempting to obtain, money or anything of value by fraudulent misrepresentations in the course of practice;

(9) A plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a felony;

(10) Commission of an act that constitutes a felony in this state, regardless of the jurisdiction in which the act was committed;

(11) A plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a misdemeanor committed in the course of practice;

(12) Commission of an act in the course of practice that constitutes a misdemeanor in this state, regardless of the jurisdiction in which the act was committed;

(13) A plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a misdemeanor involving moral turpitude;

(14) Commission of an act involving moral turpitude that constitutes a misdemeanor in this state, regardless of the jurisdiction in which the act was committed;

(15) Violation of the conditions of limitation placed by the board upon a license or certificate to practice;

(16) Failure to pay license renewal fees specified in this chapter;

(17) Except as authorized in section 4731.31 of the Revised Code, engaging in the division of fees for referral of patients, or the receiving of a thing of value in return for a specific referral of a patient to utilize a particular service or business;

(18) Subject to section 4731.226 of the Revised Code, violation of any provision of a code of ethics of the American medical association, the American osteopathic association, the American podiatric medical association, or any other national professional organizations that the board specifies by rule. The state medical board shall obtain and keep on file current copies of the codes of ethics of the various national professional organizations. The individual whose license or certificate is being suspended or revoked shall not be found to have violated any provision of a code of ethics of an organization not appropriate to the individual's profession.

For purposes of this division, a "provision of a code of ethics of a national professional organization" does not include any provision that would preclude the making of a report by a physician of an employee's use of a drug of abuse, or of a condition of an employee other than one involving the use of a drug of abuse, to the employer of the employee as described in division (B) of section 2305.33 of the Revised Code. Nothing in this division affects the immunity from civil liability conferred by that section upon a physician who makes either type of report in accordance with division (B) of that section. As used in this division, "employee," "employer," and "physician" have the same meanings as in section 2305.33 of the Revised Code.

(19) Inability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills.

In enforcing this division, the board, upon a showing of a possible violation, may compel any individual authorized to practice by this chapter or who has submitted an application pursuant to this chapter to submit to a mental examination, physical examination, including an HIV test, or both a mental and a physical examination. The expense of the examination is the responsibility of the individual compelled to be examined. Failure to submit to a mental or physical examination or consent to an HIV test ordered by the board constitutes an admission of the allegations against the individual unless the failure is due to circumstances beyond the individual's control, and a default and final order may be entered without the taking of testimony or presentation of evidence. If the board finds an individual unable to practice because of the reasons set forth in this division, the board shall require the individual to submit to care, counseling, or treatment by physicians approved or designated by the board, as a condition for initial, continued, reinstated, or renewed authority to practice. An individual affected under this division shall be afforded an opportunity to demonstrate to the board the ability to resume practice in compliance with acceptable and prevailing standards under the provisions of the individual's license or certificate. For the purpose of this division, any individual who applies for or receives a license or certificate to practice under this chapter accepts the privilege of practicing in this state and, by so doing, shall be deemed to have given consent to submit to a mental or physical examination when directed to do so in writing by the board, and to have waived all objections to the admissibility of testimony or examination reports that constitute a privileged communication.

(20) Except as provided in division (F)(1)(b) of section 4731.282 of the Revised Code or when civil penalties are imposed under section 4731.225 of the Revised Code, and subject to section

Sub. S. B. No. 23                                                                133rd G.A.

15

4731.226 of the Revised Code, violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provisions of this chapter or any rule promulgated by the board.

This division does not apply to a violation or attempted violation of, assisting in or abetting the violation of, or a conspiracy to violate, any provision of this chapter or any rule adopted by the board that would preclude the making of a report by a physician of an employee's use of a drug of abuse, or of a condition of an employee other than one involving the use of a drug of abuse, to the employer of the employee as described in division (B) of section 2305.33 of the Revised Code. Nothing in this division affects the immunity from civil liability conferred by that section upon a physician who makes either type of report in accordance with division (B) of that section. As used in this division, "employee," "employer," and "physician" have the same meanings as in section 2305.33 of the Revised Code.

(21) The violation of section 3701.79 of the Revised Code or of any abortion rule adopted by the director of health pursuant to section 3701.341 of the Revised Code;

(22) Any of the following actions taken by an agency responsible for authorizing, certifying, or regulating an individual to practice a health care occupation or provide health care services in this state or another jurisdiction, for any reason other than the nonpayment of fees: the limitation, revocation, or suspension of an individual's license to practice; acceptance of an individual's license surrender; denial of a license; refusal to renew or reinstate a license; imposition of probation; or issuance of an order of censure or other reprimand;

(23) The violation of section 2919.12 of the Revised Code or the performance or inducement of an abortion upon a pregnant woman with actual knowledge that the conditions specified in division (B) of section 2317.56 of the Revised Code have not been satisfied or with a heedless indifference as to whether those conditions have been satisfied, unless an affirmative defense as specified in division (H)(2) of that section would apply in a civil action authorized by division (H)(1) of that section;

(24) The revocation, suspension, restriction, reduction, or termination of clinical privileges by the United States department of defense or department of veterans affairs or the termination or suspension of a certificate of registration to prescribe drugs by the drug enforcement administration of the United States department of justice;

(25) Termination or suspension from participation in the medicare or medicaid programs by the department of health and human services or other responsible agency;

(26) Impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice.

For the purposes of this division, any individual authorized to practice by this chapter accepts the privilege of practicing in this state subject to supervision by the board. By filing an application for or holding a license or certificate to practice under this chapter, an individual shall be deemed to have given consent to submit to a mental or physical examination when ordered to do so by the board in writing, and to have waived all objections to the admissibility of testimony or examination reports that constitute privileged communications.

If it has reason to believe that any individual authorized to practice by this chapter or any

Sub. S. B. No. 23                                                    133rd G.A.

16

applicant for licensure or certification to practice suffers such impairment, the board may compel the individual to submit to a mental or physical examination, or both. The expense of the examination is the responsibility of the individual compelled to be examined. Any mental or physical examination required under this division shall be undertaken by a treatment provider or physician who is qualified to conduct the examination and who is chosen by the board.

Failure to submit to a mental or physical examination ordered by the board constitutes an admission of the allegations against the individual unless the failure is due to circumstances beyond the individual's control, and a default and final order may be entered without the taking of testimony or presentation of evidence. If the board determines that the individual's ability to practice is impaired, the board shall suspend the individual's license or certificate or deny the individual's application and shall require the individual, as a condition for initial, continued, reinstated, or renewed licensure or certification to practice, to submit to treatment.

Before being eligible to apply for reinstatement of a license or certificate suspended under this division, the impaired practitioner shall demonstrate to the board the ability to resume practice in compliance with acceptable and prevailing standards of care under the provisions of the practitioner's license or certificate. The demonstration shall include, but shall not be limited to, the following:

(a) Certification from a treatment provider approved under section 4731.25 of the Revised Code that the individual has successfully completed any required inpatient treatment;

(b) Evidence of continuing full compliance with an aftercare contract or consent agreement;

(c) Two written reports indicating that the individual's ability to practice has been assessed and that the individual has been found capable of practicing according to acceptable and prevailing standards of care. The reports shall be made by individuals or providers approved by the board for making the assessments and shall describe the basis for their determination.

The board may reinstate a license or certificate suspended under this division after that demonstration and after the individual has entered into a written consent agreement.

When the impaired practitioner resumes practice, the board shall require continued monitoring of the individual. The monitoring shall include, but not be limited to, compliance with the written consent agreement entered into before reinstatement or with conditions imposed by board order after a hearing, and, upon termination of the consent agreement, submission to the board for at least two years of annual written progress reports made under penalty of perjury stating whether the individual has maintained sobriety.

(27) A second or subsequent violation of section 4731.66 or 4731.69 of the Revised Code;

(28) Except as provided in division (N) of this section:

(a) Waiving the payment of all or any part of a deductible or copayment that a patient, pursuant to a health insurance or health care policy, contract, or plan that covers the individual's services, otherwise would be required to pay if the waiver is used as an enticement to a patient or group of patients to receive health care services from that individual;

(b) Advertising that the individual will waive the payment of all or any part of a deductible or copayment that a patient, pursuant to a health insurance or health care policy, contract, or plan that covers the individual's services, otherwise would be required to pay.

(29) Failure to use universal blood and body fluid precautions established by rules adopted under section 4731.051 of the Revised Code;

(30) Failure to provide notice to, and receive acknowledgment of the notice from, a patient when required by section 4731.143 of the Revised Code prior to providing nonemergency professional services, or failure to maintain that notice in the patient's medical record;

(31) Failure of a physician supervising a physician assistant to maintain supervision in accordance with the requirements of Chapter 4730. of the Revised Code and the rules adopted under that chapter;

(32) Failure of a physician or podiatrist to enter into a standard care arrangement with a clinical nurse specialist, certified nurse-midwife, or certified nurse practitioner with whom the physician or podiatrist is in collaboration pursuant to section 4731.27 of the Revised Code or failure to fulfill the responsibilities of collaboration after entering into a standard care arrangement;

(33) Failure to comply with the terms of a consult agreement entered into with a pharmacist pursuant to section 4729.39 of the Revised Code;

(34) Failure to cooperate in an investigation conducted by the board under division (F) of this section, including failure to comply with a subpoena or order issued by the board or failure to answer truthfully a question presented by the board in an investigative interview, an investigative office conference, at a deposition, or in written interrogatories, except that failure to cooperate with an investigation shall not constitute grounds for discipline under this section if a court of competent jurisdiction has issued an order that either quashes a subpoena or permits the individual to withhold the testimony or evidence in issue;

(35) Failure to supervise an oriental medicine practitioner or acupuncturist in accordance with Chapter 4762. of the Revised Code and the board's rules for providing that supervision;

(36) Failure to supervise an anesthesiologist assistant in accordance with Chapter 4760. of the Revised Code and the board's rules for supervision of an anesthesiologist assistant;

(37) Assisting suicide, as defined in section 3795.01 of the Revised Code;

(38) Failure to comply with the requirements of section 2317.561 of the Revised Code;

(39) Failure to supervise a radiologist assistant in accordance with Chapter 4774. of the Revised Code and the board's rules for supervision of radiologist assistants;

(40) Performing or inducing an abortion at an office or facility with knowledge that the office or facility fails to post the notice required under section 3701.791 of the Revised Code;

(41) Failure to comply with the standards and procedures established in rules under section 4731.054 of the Revised Code for the operation of or the provision of care at a pain management clinic;

(42) Failure to comply with the standards and procedures established in rules under section 4731.054 of the Revised Code for providing supervision, direction, and control of individuals at a pain management clinic;

(43) Failure to comply with the requirements of section 4729.79 or 4731.055 of the Revised Code, unless the state board of pharmacy no longer maintains a drug database pursuant to section 4729.75 of the Revised Code;

(44) Failure to comply with the requirements of section 2919.171, 2919.202, or 2919.203 of the Revised Code or failure to submit to the department of health in accordance with a court order a complete report as described in section 2919.171 or 2919.202 of the Revised Code;

(45) Practicing at a facility that is subject to licensure as a category III terminal distributor of

dangerous drugs with a pain management clinic classification unless the person operating the facility has obtained and maintains the license with the classification;

(46) Owning a facility that is subject to licensure as a category III terminal distributor of dangerous drugs with a pain management clinic classification unless the facility is licensed with the classification;

(47) Failure to comply with any of the ~~requirement~~ requirements regarding making or maintaining ~~notes~~ medical records or documents described in division ~~(B)~~ (A) of section ~~2919.191~~ 2919.192, division (C) of section 2919.193, division (B) of section 2919.195, or division (A) of section 2919.196 of the Revised Code ~~or failure to satisfy the requirements of section 2919.191 of the Revised Code prior to performing or inducing an abortion upon a pregnant woman~~;

(48) Failure to comply with the requirements in section 3719.061 of the Revised Code before issuing for a minor a prescription for an opioid analgesic, as defined in section 3719.01 of the Revised Code;

(49) Failure to comply with the requirements of section 4731.30 of the Revised Code or rules adopted under section 4731.301 of the Revised Code when recommending treatment with medical marijuana;

(50) Practicing at a facility, clinic, or other location that is subject to licensure as a category III terminal distributor of dangerous drugs with an office-based opioid treatment classification unless the person operating that place has obtained and maintains the license with the classification;

(51) Owning a facility, clinic, or other location that is subject to licensure as a category III terminal distributor of dangerous drugs with an office-based opioid treatment classification unless that place is licensed with the classification;

(52) A pattern of continuous or repeated violations of division (E)(2) or (3) of section 3963.02 of the Revised Code.

(C) Disciplinary actions taken by the board under divisions (A) and (B) of this section shall be taken pursuant to an adjudication under Chapter 119. of the Revised Code, except that in lieu of an adjudication, the board may enter into a consent agreement with an individual to resolve an allegation of a violation of this chapter or any rule adopted under it. A consent agreement, when ratified by an affirmative vote of not fewer than six members of the board, shall constitute the findings and order of the board with respect to the matter addressed in the agreement. If the board refuses to ratify a consent agreement, the admissions and findings contained in the consent agreement shall be of no force or effect.

A telephone conference call may be utilized for ratification of a consent agreement that revokes or suspends an individual's license or certificate to practice or certificate to recommend. The telephone conference call shall be considered a special meeting under division (F) of section 121.22 of the Revised Code.

If the board takes disciplinary action against an individual under division (B) of this section for a second or subsequent plea of guilty to, or judicial finding of guilt of, a violation of section 2919.123 of the Revised Code, the disciplinary action shall consist of a suspension of the individual's license or certificate to practice for a period of at least one year or, if determined appropriate by the board, a more serious sanction involving the individual's license or certificate to practice. Any consent agreement entered into under this division with an individual that pertains to a second or

Sub. S. B. No. 23 133rd G.A.

19

subsequent plea of guilty to, or judicial finding of guilt of, a violation of that section shall provide for a suspension of the individual's license or certificate to practice for a period of at least one year or, if determined appropriate by the board, a more serious sanction involving the individual's license or certificate to practice.

(D) For purposes of divisions (B)(10), (12), and (14) of this section, the commission of the act may be established by a finding by the board, pursuant to an adjudication under Chapter 119. of the Revised Code, that the individual committed the act. The board does not have jurisdiction under those divisions if the trial court renders a final judgment in the individual's favor and that judgment is based upon an adjudication on the merits. The board has jurisdiction under those divisions if the trial court issues an order of dismissal upon technical or procedural grounds.

(E) The sealing of conviction records by any court shall have no effect upon a prior board order entered under this section or upon the board's jurisdiction to take action under this section if, based upon a plea of guilty, a judicial finding of guilt, or a judicial finding of eligibility for intervention in lieu of conviction, the board issued a notice of opportunity for a hearing prior to the court's order to seal the records. The board shall not be required to seal, destroy, redact, or otherwise modify its records to reflect the court's sealing of conviction records.

(F)(1) The board shall investigate evidence that appears to show that a person has violated any provision of this chapter or any rule adopted under it. Any person may report to the board in a signed writing any information that the person may have that appears to show a violation of any provision of this chapter or any rule adopted under it. In the absence of bad faith, any person who reports information of that nature or who testifies before the board in any adjudication conducted under Chapter 119. of the Revised Code shall not be liable in damages in a civil action as a result of the report or testimony. Each complaint or allegation of a violation received by the board shall be assigned a case number and shall be recorded by the board.

(2) Investigations of alleged violations of this chapter or any rule adopted under it shall be supervised by the supervising member elected by the board in accordance with section 4731.02 of the Revised Code and by the secretary as provided in section 4731.39 of the Revised Code. The president may designate another member of the board to supervise the investigation in place of the supervising member. No member of the board who supervises the investigation of a case shall participate in further adjudication of the case.

(3) In investigating a possible violation of this chapter or any rule adopted under this chapter, or in conducting an inspection under division (E) of section 4731.054 of the Revised Code, the board may question witnesses, conduct interviews, administer oaths, order the taking of depositions, inspect and copy any books, accounts, papers, records, or documents, issue subpoenas, and compel the attendance of witnesses and production of books, accounts, papers, records, documents, and testimony, except that a subpoena for patient record information shall not be issued without consultation with the attorney general's office and approval of the secretary and supervising member of the board.

(a) Before issuance of a subpoena for patient record information, the secretary and supervising member shall determine whether there is probable cause to believe that the complaint filed alleges a violation of this chapter or any rule adopted under it and that the records sought are relevant to the alleged violation and material to the investigation. The subpoena may apply only to

Sub. S. B. No. 23                                                                                    133rd G.A.

20

records that cover a reasonable period of time surrounding the alleged violation.

(b) On failure to comply with any subpoena issued by the board and after reasonable notice to the person being subpoenaed, the board may move for an order compelling the production of persons or records pursuant to the Rules of Civil Procedure.

(c) A subpoena issued by the board may be served by a sheriff, the sheriff's deputy, or a board employee or agent designated by the board. Service of a subpoena issued by the board may be made by delivering a copy of the subpoena to the person named therein, reading it to the person, or leaving it at the person's usual place of residence, usual place of business, or address on file with the board. When serving a subpoena to an applicant for or the holder of a license or certificate issued under this chapter, service of the subpoena may be made by certified mail, return receipt requested, and the subpoena shall be deemed served on the date delivery is made or the date the person refuses to accept delivery. If the person being served refuses to accept the subpoena or is not located, service may be made to an attorney who notifies the board that the attorney is representing the person.

(d) A sheriff's deputy who serves a subpoena shall receive the same fees as a sheriff. Each witness who appears before the board in obedience to a subpoena shall receive the fees and mileage provided for under section 119.094 of the Revised Code.

(4) All hearings, investigations, and inspections of the board shall be considered civil actions for the purposes of section 2305.252 of the Revised Code.

(5) A report required to be submitted to the board under this chapter, a complaint, or information received by the board pursuant to an investigation or pursuant to an inspection under division (E) of section 4731.054 of the Revised Code is confidential and not subject to discovery in any civil action.

The board shall conduct all investigations or inspections and proceedings in a manner that protects the confidentiality of patients and persons who file complaints with the board. The board shall not make public the names or any other identifying information about patients or complainants unless proper consent is given or, in the case of a patient, a waiver of the patient privilege exists under division (B) of section 2317.02 of the Revised Code, except that consent or a waiver of that nature is not required if the board possesses reliable and substantial evidence that no bona fide physician-patient relationship exists.

The board may share any information it receives pursuant to an investigation or inspection, including patient records and patient record information, with law enforcement agencies, other licensing boards, and other governmental agencies that are prosecuting, adjudicating, or investigating alleged violations of statutes or administrative rules. An agency or board that receives the information shall comply with the same requirements regarding confidentiality as those with which the state medical board must comply, notwithstanding any conflicting provision of the Revised Code or procedure of the agency or board that applies when it is dealing with other information in its possession. In a judicial proceeding, the information may be admitted into evidence only in accordance with the Rules of Evidence, but the court shall require that appropriate measures are taken to ensure that confidentiality is maintained with respect to any part of the information that contains names or other identifying information about patients or complainants whose confidentiality was protected by the state medical board when the information was in the board's possession. Measures to ensure confidentiality that may be taken by the court include sealing its records or

Sub. S. B. No. 23                                                          133rd G.A.

21

deleting specific information from its records.

(6) On a quarterly basis, the board shall prepare a report that documents the disposition of all cases during the preceding three months. The report shall contain the following information for each case with which the board has completed its activities:

(a) The case number assigned to the complaint or alleged violation;

(b) The type of license or certificate to practice, if any, held by the individual against whom the complaint is directed;

(c) A description of the allegations contained in the complaint;

(d) The disposition of the case.

The report shall state how many cases are still pending and shall be prepared in a manner that protects the identity of each person involved in each case. The report shall be a public record under section 149.43 of the Revised Code.

(G) If the secretary and supervising member determine both of the following, they may recommend that the board suspend an individual's license or certificate to practice or certificate to recommend without a prior hearing:

(1) That there is clear and convincing evidence that an individual has violated division (B) of this section;

(2) That the individual's continued practice presents a danger of immediate and serious harm to the public.

Written allegations shall be prepared for consideration by the board. The board, upon review of those allegations and by an affirmative vote of not fewer than six of its members, excluding the secretary and supervising member, may suspend a license or certificate without a prior hearing. A telephone conference call may be utilized for reviewing the allegations and taking the vote on the summary suspension.

The board shall issue a written order of suspension by certified mail or in person in accordance with section 119.07 of the Revised Code. The order shall not be subject to suspension by the court during pendency of any appeal filed under section 119.12 of the Revised Code. If the individual subject to the summary suspension requests an adjudicatory hearing by the board, the date set for the hearing shall be within fifteen days, but not earlier than seven days, after the individual requests the hearing, unless otherwise agreed to by both the board and the individual.

Any summary suspension imposed under this division shall remain in effect, unless reversed on appeal, until a final adjudicative order issued by the board pursuant to this section and Chapter 119. of the Revised Code becomes effective. The board shall issue its final adjudicative order within seventy-five days after completion of its hearing. A failure to issue the order within seventy-five days shall result in dissolution of the summary suspension order but shall not invalidate any subsequent, final adjudicative order.

(H) If the board takes action under division (B)(9), (11), or (13) of this section and the judicial finding of guilt, guilty plea, or judicial finding of eligibility for intervention in lieu of conviction is overturned on appeal, upon exhaustion of the criminal appeal, a petition for reconsideration of the order may be filed with the board along with appropriate court documents. Upon receipt of a petition of that nature and supporting court documents, the board shall reinstate the individual's license or certificate to practice. The board may then hold an adjudication under Chapter

Sub. S. B. No. 23                                                                133rd G.A.

22

119. of the Revised Code to determine whether the individual committed the act in question. Notice of an opportunity for a hearing shall be given in accordance with Chapter 119. of the Revised Code. If the board finds, pursuant to an adjudication held under this division, that the individual committed the act or if no hearing is requested, the board may order any of the sanctions identified under division (B) of this section.

(I) The license or certificate to practice issued to an individual under this chapter and the individual's practice in this state are automatically suspended as of the date of the individual's second or subsequent plea of guilty to, or judicial finding of guilt of, a violation of section 2919.123 of the Revised Code. In addition, the license or certificate to practice or certificate to recommend issued to an individual under this chapter and the individual's practice in this state are automatically suspended as of the date the individual pleads guilty to, is found by a judge or jury to be guilty of, or is subject to a judicial finding of eligibility for intervention in lieu of conviction in this state or treatment or intervention in lieu of conviction in another jurisdiction for any of the following criminal offenses in this state or a substantially equivalent criminal offense in another jurisdiction: aggravated murder, murder, voluntary manslaughter, felonious assault, kidnapping, rape, sexual battery, gross sexual imposition, aggravated arson, aggravated robbery, or aggravated burglary. Continued practice after suspension shall be considered practicing without a license or certificate.

The board shall notify the individual subject to the suspension by certified mail or in person in accordance with section 119.07 of the Revised Code. If an individual whose license or certificate is automatically suspended under this division fails to make a timely request for an adjudication under Chapter 119. of the Revised Code, the board shall do whichever of the following is applicable:

(1) If the automatic suspension under this division is for a second or subsequent plea of guilty to, or judicial finding of guilt of, a violation of section 2919.123 of the Revised Code, the board shall enter an order suspending the individual's license or certificate to practice for a period of at least one year or, if determined appropriate by the board, imposing a more serious sanction involving the individual's license or certificate to practice.

(2) In all circumstances in which division (I)(1) of this section does not apply, enter a final order permanently revoking the individual's license or certificate to practice.

(J) If the board is required by Chapter 119. of the Revised Code to give notice of an opportunity for a hearing and if the individual subject to the notice does not timely request a hearing in accordance with section 119.07 of the Revised Code, the board is not required to hold a hearing, but may adopt, by an affirmative vote of not fewer than six of its members, a final order that contains the board's findings. In that final order, the board may order any of the sanctions identified under division (A) or (B) of this section.

(K) Any action taken by the board under division (B) of this section resulting in a suspension from practice shall be accompanied by a written statement of the conditions under which the individual's license or certificate to practice may be reinstated. The board shall adopt rules governing conditions to be imposed for reinstatement. Reinstatement of a license or certificate suspended pursuant to division (B) of this section requires an affirmative vote of not fewer than six members of the board.

(L) When the board refuses to grant or issue a license or certificate to practice to an applicant, revokes an individual's license or certificate to practice, refuses to renew an individual's license or

certificate to practice, or refuses to reinstate an individual's license or certificate to practice, the board may specify that its action is permanent. An individual subject to a permanent action taken by the board is forever thereafter ineligible to hold a license or certificate to practice and the board shall not accept an application for reinstatement of the license or certificate or for issuance of a new license or certificate.

(M) Notwithstanding any other provision of the Revised Code, all of the following apply:

(1) The surrender of a license or certificate issued under this chapter shall not be effective unless or until accepted by the board. A telephone conference call may be utilized for acceptance of the surrender of an individual's license or certificate to practice. The telephone conference call shall be considered a special meeting under division (F) of section 121.22 of the Revised Code. Reinstatement of a license or certificate surrendered to the board requires an affirmative vote of not fewer than six members of the board.

(2) An application for a license or certificate made under the provisions of this chapter may not be withdrawn without approval of the board.

(3) Failure by an individual to renew a license or certificate to practice in accordance with this chapter or a certificate to recommend in accordance with rules adopted under section 4731.301 of the Revised Code shall not remove or limit the board's jurisdiction to take any disciplinary action under this section against the individual.

(4) At the request of the board, a license or certificate holder shall immediately surrender to the board a license or certificate that the board has suspended, revoked, or permanently revoked.

(N) Sanctions shall not be imposed under division (B)(28) of this section against any person who waives deductibles and copayments as follows:

(1) In compliance with the health benefit plan that expressly allows such a practice. Waiver of the deductibles or copayments shall be made only with the full knowledge and consent of the plan purchaser, payer, and third-party administrator. Documentation of the consent shall be made available to the board upon request.

(2) For professional services rendered to any other person authorized to practice pursuant to this chapter, to the extent allowed by this chapter and rules adopted by the board.

(O) Under the board's investigative duties described in this section and subject to division (F) of this section, the board shall develop and implement a quality intervention program designed to improve through remedial education the clinical and communication skills of individuals authorized under this chapter to practice medicine and surgery, osteopathic medicine and surgery, and podiatric medicine and surgery. In developing and implementing the quality intervention program, the board may do all of the following:

(1) Offer in appropriate cases as determined by the board an educational and assessment program pursuant to an investigation the board conducts under this section;

(2) Select providers of educational and assessment services, including a quality intervention program panel of case reviewers;

(3) Make referrals to educational and assessment service providers and approve individual educational programs recommended by those providers. The board shall monitor the progress of each individual undertaking a recommended individual educational program.

(4) Determine what constitutes successful completion of an individual educational program

Sub. S. B. No. 23                                                                                        133rd G.A.

and require further monitoring of the individual who completed the program or other action that the board determines to be appropriate;

(5) Adopt rules in accordance with Chapter 119. of the Revised Code to further implement the quality intervention program.

An individual who participates in an individual educational program pursuant to this division shall pay the financial obligations arising from that educational program.

Sec. 5103.11. There is hereby created the foster care and adoption initiatives fund. The fund shall be in the custody of the treasurer of state, but shall not be part of the state treasury. The fund shall consist of moneys collected under section 2919.1912 of the Revised Code. All interest earned on the fund shall be credited to the fund. The purpose of the fund is to provide funding for foster care and adoption services and initiatives. The department of job and family services shall allocate moneys from the fund according to the following distribution:

(A) Fifty per cent of the moneys in the fund shall be used for foster care services and initiatives.

(B) Fifty per cent of the moneys in the fund shall be used for adoption services and initiatives.


SECTION 2. That existing sections 2317.56, 2919.171, 2919.19, 2919.191, 2919.192, 2919.193, and 4731.22 of the Revised Code are hereby repealed.


SECTION 3. The General Assembly hereby declares that it finds, according to contemporary medical research, all of the following:

(A) As many as thirty per cent of natural pregnancies end in spontaneous miscarriage.

(B) Less than five per cent of all natural pregnancies end in spontaneous miscarriage after detection of fetal cardiac activity.

(C) Over ninety per cent of in vitro pregnancies survive the first trimester if cardiac activity is detected in the gestational sac.

(D) Nearly ninety per cent of in vitro pregnancies do not survive the first trimester where cardiac activity is not detected in the gestational sac.

(E) Fetal heartbeat, therefore, has become a key medical predictor that an unborn human individual will reach live birth.

(F) Cardiac activity begins at a biologically identifiable moment in time, normally when the fetal heart is formed in the gestational sac.

(G) The State of Ohio has a valid interest in protecting the health of the woman. The State of Ohio has a compelling interest in protecting the life of an unborn human individual who may be born.

(H) In order to make an informed choice about whether to continue her pregnancy, the pregnant woman has a valid interest in knowing the likelihood of the fetus surviving to full-term birth based upon the presence of cardiac activity.

(I) The State of Ohio finds that the detection of a fetal heartbeat can be accomplished through standard medical practices.

Sub. S. B. No. 23                                                    133rd G.A.

25

(J) At fertilization, a human being emerges as a whole, genetically distinct, living human organism and needs only the proper environment to fully develop into a human.

(K) Cardiac activity shows that tissues have come together to form organs and the developing central nervous system signals the heart to autonomically beat.

(L) When a heartbeat is visualized at seven weeks or less, ninety-one and one-half per cent will survive the first trimester and ninety-five per cent of those will deliver live- born infants.

(M) After the detection of a fetal heartbeat there is a ninety-five to ninety-eight per cent certainty that the new life will develop full term.

(N) A human being at an embryonic age and a human being at an adult age are naturally the same, with the only biological differences being due to the differences in maturity.

SECTION 4. If any provisions of a section as amended or enacted by this act, or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.

SECTION 5. Section 4731.22 of the Revised Code is presented in this act as a composite of the section as amended by both Am. Sub. H.B. 111 and Sub. H.B. 156 of the 132nd General Assembly. The General Assembly, applying the principle stated in division (B) of section 1.52 of the Revised Code that amendments are to be harmonized if reasonably capable of simultaneous operation, finds that the composite is the resulting version of the section in effect prior to the effective date of the section as presented in this act.

Sub. S. B. No. 23                                                    133rd G.A.

_____

*Speaker* _____ *of the House of Representatives.*


_____

*President* _____ *of the Senate.*


Passed _____, 20_____


Approved _____, 20_____


_____

*Governor.*

Sub. S. B. No. 23                                                    133rd G.A.

    The section numbering of law of a general and permanent nature is
complete and in conformity with the Revised Code.

_____

                            *Director, Legislative Service Commission.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the _____
day of _____, A. D. 20_____.

_____

                                      *Secretary of State.*

File No. _____        Effective Date _____