UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PRETERM-CLEVELAND, INC.,** *et al.*, | : : : | Case No. 1:19-CV-00360 |
| | : | Judge Michael R. Barrett |
| Plaintiffs, | : : | |
| v. | : : | |
| **DAVID YOST,** *et al.*, | : : | |
| Defendants. | : | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AND PERMANENT INJUNCTION

This case challenges a near-total ban on abortion, which is unconstitutional as a matter of law. Senate Bill 23 ("S.B. 23" or the "Ban") would make it a felony to provide abortion starting at approximately six weeks of pregnancy, a point at which many individuals do not even know they are pregnant and long before fetal viability. Senate Bill 23 would criminalize ninety percent of abortions currently performed in Ohio. This Court has already held that Plaintiffs "are certain to succeed on the merits of their claim that S.B. 23 is unconstitutional on its face." Order Granting Pls.' Mot. Prelim. Inj. ("Prelim. Inj. Order") at 6–10, Doc. 29. Indeed, the Ban is unquestionably unconstitutional under forty-six years of Supreme Court precedent, beginning with *Roe v. Wade*, 410 U.S. 113 (1973), which unequivocally holds that a state may not ban abortion before the point of fetal viability. As such, Plaintiffs are entitled to judgment as a matter of law, and this Court should permanently enjoin the Ban.

### STATUTORY FRAMEWORK

If a patient's pregnancy is in the uterus, Ohio law requires the provider who intends to perform an abortion to determine whether there is detectible cardiac activity. Ohio Rev. Code § 2919.191. If cardiac activity is detected, the Ban makes it a crime to "caus[e] or abet[] the

1

termination of" the pregnancy.[1] S.B. 23 § 1, amending Ohio Rev. Code § 2919.195(A). Typically, cardiac activity can be detected around six weeks into pregnancy. Verified Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 32, Doc. 1. Pregnancy is dated using the first day of the patient's last menstrual period ("LMP"). *Id*. ¶ 35. Thus, six weeks into pregnancy would be, at most, approximately two weeks after the patient first misses their period. *Id*. ¶ 36.

Senate Bill 23 permits abortion after cardiac activity is detected only if the abortion is necessary to prevent the patient's death or to prevent "serious risk of the substantial and irreversible impairment of a major bodily function." S.B. 23, § 1, amending Ohio Rev. Code § 2919.195(B). "'Serious risk of substantial and irreversible impairment of a major bodily function' means any medically diagnosed condition that so complicates the pregnancy of the woman as to directly or indirectly cause the substantial and irreversible impairment of a major bodily function," which "includes pre-eclampsia, inevitable abortion, and premature rupture of the membranes[;] may include, but is not limited to, diabetes and multiple sclerosis[;] and does not include a condition related to the woman's mental health." Ohio Rev. Code § 2919.16(K).

A violation of the Ban is a fifth-degree felony, punishable by up to one year in prison and a fine of $2,500. S.B. 23 § 1, amending Ohio Rev. Code § 2919.195(A); Ohio Rev. Code §§ 2929.14(A)(5), 2929.18(A)(3)(e). In addition to imposing criminal penalties, the statute states that the Ohio medical board may assess a forfeiture of up to $20,000 for each violation of the Ban, S.B. 23 § 1, amending Ohio Rev. Code § 2919.1912(A), and limit, revoke, or suspend a physician's medical license based on a violation of the Ban, *see* Ohio Rev. Code

---

[1] S.B. 23 instructs the Ohio Department of Health to adopt rules "specifying the appropriate methods of performing an examination for the purpose of determining the presence of a fetal heartbeat" within 120 days of the passage of the bill. S.B. 23 § 1, amending Ohio Rev. Code § 2919.192.

§ 4371.22(B)(10). The Plaintiff facilities could face revocation of their ambulatory surgical facility license for a violation of the Ban at their facilities. A patient may also bring a civil action against a provider who violates the Ban and recover damages in the amount of $10,000 or more. S.B. 23 § 1, amending Ohio Rev. Code § 2919.199(B)(1).

The Ohio General Assembly passed S.B. 23 on April 10, 2019. Compl. ¶ 4. Plaintiffs filed a Verified Complaint and Motion for Temporary Restraining Order and/or Preliminary Injunction on May 15, 2019. Doc. 1, Doc. 2. This Court granted Plaintiffs' Motion and entered a Preliminary Injunction on July 3, 2019. Prelim. Inj. Order, Doc. 29.

## STATEMENT OF FACTS

One critical and indisputable fact resolves this case: S.B. 23 bans abortion care at and after approximately six weeks of pregnancy, which is prior to viability. Compl. ¶¶ 32, 34. Defendants do not deny this fact. Defs. Ohio Department of Health, State Medical Board of Ohio, & Ohio Attorney General Dave Yost's Answer & Affirmative Defenses (Doc. 1) ("Answer"), Doc. 30; *see also* Prelim Inj. Order at 10 ("Defendants offer <u>no</u> testimony . . . that viability exists at six weeks LMP." (emphasis in original)).

In a normally developing embryo, cells that form the basis for development of the heart later in gestation produce activity that can be detected with ultrasound. Compl. ¶ 30. Consistent with common medical practice, as well as existing law, *see* Ohio Rev. Code § 2919.191(A), Plaintiffs perform an ultrasound to date the pregnancy and to determine whether there is detectable cardiac activity. Compl. ¶ 31. An ultrasound can be performed either by placing a transducer on the patient's abdomen or by inserting a probe into the patient's vagina. *Id.* Many providers, including providers at Plaintiff clinics, use a vaginal ultrasound to confirm and date early pregnancy. *Id.* Using vaginal ultrasound, cardiac activity is generally detectable beginning at approximately six weeks LMP. *Id.* ¶ 32. At that point in pregnancy, no embryo is capable of

3

surviving outside of the womb. *Id*. ¶ 34. Thus, S.B. 23 prohibits abortion well before viability. *Id*.

At six weeks in pregnancy, many women are unaware that they are pregnant.[2] *Id*. ¶ 39. The menstrual cycle is usually approximately four weeks long, but will vary based on the individual. *Id*. ¶ 36. Thus, even a woman with highly regular periods would be four weeks pregnant as measured from her last menstrual period when her missed period occurs. *Id.* A ban on abortion at and after six weeks would only allow two weeks, at most, for a woman to learn that she is pregnant, decide whether to have an abortion, and seek and obtain abortion care. *Id.* Those who have irregular periods—which are extremely common and occur for a variety of reasons, including certain common medical conditions, contraceptive use, age, or breastfeeding—or those who experience bleeding during early pregnancy that could be mistaken for a period may be denied the opportunity to obtain abortion care altogether because they may not have even realized that they missed a period. *Id*. ¶¶ 37–39.

In addition to the medical reasons that might make abortion difficult or impossible to obtain on this shortened timeline, many patients will face logistical obstacles to obtaining abortion care before six weeks of pregnancy. *Id*. ¶ 40. Patients will need to schedule an appointment, gather the resources to pay for the abortion and related costs,[3] and arrange

---

[2] Plaintiffs use "women" in this memorandum as a short-hand for people who are or may become pregnant, but note that people of all gender identities, including gender non-conforming people and transgender men, may also become pregnant and seek abortion care and would thus also suffer irreparable harm as a result of the Ban.

[3] Ohio Law prohibits public insurance, including Medicaid, and insurance purchased on the state health exchange from covering abortion services except in the very limited circumstances where a patient's life is at risk, where the pregnancy is a result of rape and that rape has been reported to law enforcement, or where the pregnancy is the result of incest and that incest has been reported to law enforcement. Ohio Rev. Code §§ 9.04, 3901.87; Ohio Admin. Code § 5160-17-01.

transportation to a clinic, time off of work, and, possibly, childcare during appointments.[4] *Id.* ¶ 42. Minor patients, unless emancipated, must also obtain written consent from a parent or a court order from a judge before they can receive care. Ohio Rev. Code § 2919.121. All of these burdens are increased by an Ohio law mandating that all patients make two in-person trips to the clinic at least 24 hours apart in order to obtain an abortion. Compl. ¶¶ 40–41; Ohio Rev. Code § 2317.56. For all of the above reasons, the vast majority of abortions in Ohio take place at or after six weeks of pregnancy. Compl. ¶ 44. Thus, S.B. 23 will prohibit almost all abortion care in Ohio. *Id.* ¶ 45. Defendants do not deny this fact. Answer; *see also* Prelim. Inj. Order at 6 (Defendants "do not challenge" Plaintiffs' claim that S.B. 23 will prohibit ninety percent of abortions).

The decision to terminate a pregnancy is informed by a combination of diverse, complex, and interrelated factors that are intimately related to an individual's values and beliefs, culture and religion, health status and reproductive history, familial situation, and resources and economic stability. Compl. ¶ 3. A child can place economic and emotional strain on a family and may interfere with an individual's life goals. *Id.* ¶ 50. As most patients who seek abortion already have at least one child, families must consider how an additional child will impact their ability to care for the children they already have. *Id.* Even for someone who is otherwise healthy and has an uncomplicated pregnancy, carrying that pregnancy to term and giving birth poses serious medical risks and can have long-term medical and physical consequences. *Id.* ¶ 51. For a woman with a medical condition caused or exacerbated by pregnancy, or who learns that her fetus has been diagnosed with a severe or lethal anomaly, these risks are increased. *Id.* Pregnancy, childbirth, and an additional child may exacerbate an already difficult situation for

---

[4] A majority of those having abortions (61%) already have at least one child. Compl. ¶ 47.

those who have suffered trauma, such as sexual assault or domestic violence. *Id*. ¶ 52. The near-total ban on abortion imposed by S.B. 23 would have a devastating impact on the lives of individuals who want to consider or seek abortion in Ohio, and a disproportionate impact on the lives of Black people, other people of color, and people with low incomes in Ohio.[5] Compl. ¶¶ 53–54.

## ARGUMENT

**I. Plaintiffs are Entitled to Judgment Because the Ban is Unconstitutional as a Matter of Law.**

"After pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (*Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

Plaintiffs are entitled to judgment as a matter of law because the Ban is a blatantly unconstitutional violation of Plaintiffs' patients' rights guaranteed by the Fourteenth Amendment. The Supreme Court has repeatedly and unequivocally held that the government

---

[5] In 2017, Black people made up only 12.9% of Ohio's population, but 40% of people who obtained abortions in Ohio. Indigenous (American Indian) people and other people of color (Asian/Pacific Islander, Multiracial, and Hispanic people) made up 8.8% of the population, but 11.9% of the people who obtained abortions. Ohio Dep't of Health, *Induced Abortions in Ohio* 9 (2018), https://odh.ohio.gov/wps/portal/gov/odh/know-our-programs/vital-statistics/resources/vs-abortionreport2017; *Quick Facts: Ohio*, U.S. Census Bureau (July 1, 2018), https://www.census.gov/quickfacts/oh. Consistent with national statistics, a large majority of people who obtain abortion care in Ohio have low incomes. Compl. ¶ 57; *see EMW Women's Surgical Ctr., P.S.C. v. Glisson*, No. 3:17-CV-00189-GNS, 2018 WL 6444391, at *8 n.11 (W.D. Ky. Sept. 28, 2018) (crediting recent statistics showing that nationally seventy-five percent of abortion patients have low-incomes (citing Nat'l Acads. of Scis., Eng'g & Med., *The Safety and Quality of Abortion Care in the United States*, S-6 (2018))).

may not ban abortion prior to viability. Nearly five decades ago, the Supreme Court struck down as unconstitutional a state criminal abortion statute proscribing all abortions except those performed to save the life of the pregnant woman. *Roe*, 410 U.S. at 166. Specifically, the Supreme Court held that (1) the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects a woman's right to choose abortion, *id.* at 153–54, and, (2) prior to viability, the State has no interest sufficient to justify a ban on abortion, *id.* at 163–65. Rather, the State may "proscribe" abortion only *after* viability—and, even then, may not ban abortion where necessary to preserve the life or health of the woman. *Id.*

The Supreme Court has repeatedly reaffirmed that core holding in the more than four decades since *Roe* was decided. For example, in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, decided more than a quarter century ago, the Court reaffirmed the "central principle" of *Roe* that, "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion . . . ." 505 U.S. 833, 846 (1992). Although *Casey* jettisoned *Roe*'s strict scrutiny standard in favor of the "undue burden" standard, under which a restriction on pre-viability abortion is permitted as long as the law does not place a "substantial obstacle" in the path of a woman seeking abortion, the Court emphasized:

> Our adoption of the undue burden analysis does not disturb the central holding of *Roe v. Wade*, and we reaffirm that holding. Regardless of whether exceptions are made for particular circumstances, *a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability*.

505 U.S. at 879 (emphasis added); *see also id.* at 846 ("*Roe*'s essential holding . . . is a recognition of the right of the woman to choose to have an abortion before viability"); *id.* at 871 (any state interest is "insufficient to justify a ban on abortions prior to viability even when it is subject to certain exceptions"). These central holdings have been repeatedly reaffirmed by the

7

Court, including as recently as 2016. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2300 (2016).

Unsurprisingly, attempts to ban abortion prior to viability have been uniformly rejected by the courts. *See, e.g.*, *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 776 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1115 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson v. Horne*, 716 F.3d 1213, 1217, 1231 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 905 (2014); *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 201 (6th Cir. 1997), *cert. denied*, 523 U.S. 1036 (1998); *Jane L. v. Bangerter*, 102 F.3d 1112, 1114, 1117–18 (10th Cir. 1996), *cert. denied sub nom Leavitt v. Jane L.*, 520 U.S. 1274 (1997); *Sojourner T. v. Edwards*, 974 F.2d 27, 29, 31 (5th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368–69 (9th Cir. 1992), *cert. denied*, 506 U.S. 1011 (1992); *Jackson Women's Health Org. v. Currier*, No. 3:18-CV-171-CWR-FKB, 2018 WL 6072127 (S.D. Miss. Nov. 20, 2018), *appeal docketed sub nom. Jackson Women's Health Org. v. Dobbs*, No. 18-60868 (5th Cir. Dec. 17, 2018). Just recently, federal district courts in Mississippi and Kentucky preliminarily enjoined six-week abortion bans that are similar to the one challenged here. *Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d 549 (S.D. Miss. May 24, 2019), *appeal docketed*, No. 19-60455 (5th Cir. June 24, 2019); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:18-cv-178-DJH, 2019 WL 1233575 (W.D. Ky. Mar. 15, 2019).

Under this binding precedent, the Ban is inarguably unconstitutional as a matter of law, irrespective of any interest the State may assert to support it. *See, e.g.*, *Casey*, 505 U.S. at 846; *Roe* 410 U.S. at 164–65.

Moreover, as *Roe* recognized, the loss of abortion access can impose serious harm:

8

> Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it.

410 U.S. at 153. Abortion access is also critical to women's equality. As the Supreme Court observed in *Casey*, access to abortion has improved women's lives: "The ability of women to participate equally in the economic and social life of the Nation has been facilitated by their ability to control their reproductive lives." *Casey*, 505 U.S. at 856.

For the above reasons, Plaintiffs easily meet the requirements of Fed. R. Civ. P. 12(c) and are therefore entitled to judgment in their favor.

## II. Plaintiffs Are Entitled to a Permanent Injunction.

"A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011) (quoting *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010)). The standard for a permanent injunction is "essentially the same" as it is for a preliminary injunction. *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2019) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

This Court has already held that all four injunction factors weigh in favor of Plaintiffs. Prelim. Inj. Order at 6–12. Specifically, this Court held that Plaintiffs "are certain to succeed on the merits of their claim that S.B. 23 is unconstitutional on its face," *id.* at 6; that the Ban, if enforced, "would, per se, inflict irreparable harm," *id.* at 10 (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); that "Defendants will suffer no injury whatsoever" from the issuance of an injunction,

9

*id.* at 11 (citing *Casey* 505, U.S. at 846; *Jackson Women's Health Org. v. Currier*, 940 F. Supp. 2d 416, 424 (S.D. Miss. 2013)); and that "[t]he public interest is promoted by the robust enforcement of constitutional rights," *id*. (quoting *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART)*, 698 F.3d 885, 896 (6th Cir. 2012) and citing *Doe v. Barron*, 92 F. Supp. 2d 694, 697 (S.D. Ohio 1999)).

Thus, Plaintiffs are entitled to a permanent injunction.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Judgment on the Pleadings, declare the Ban unconstitutional, and permanently enjoin its enforcement.

Dated: August 20, 2019

    Respectfully Submitted,

    /s/ B. Jessie Hill
    B. Jessie Hill #0074770
    *Trial Attorney for Plaintiffs*
    Cooperating Counsel for the ACLU of
    Ohio Foundation
    ACLU of Ohio
    4506 Chester Ave.
    Cleveland, OH 44103
    (216) 368-0553
    (216) 368-2086 (fax)
    bjh11@cwru.edu
    *Counsel for Plaintiff Preterm-Cleveland*

    Elizabeth Watson*
    Rachel Reeves*
    Brigitte Amiri*
    American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
    New York, NY 10004
    (212) 549-2633
    (212) 549-2650 (fax)
    ewatson@aclu.org
    rreeves@aclu.org
    bamiri@aclu.org
    *Counsel for Plaintiff Preterm-Cleveland*

Richard Muniz*
Planned Parenthood Federation of America
1110 Vermont Ave NW, Suite 300
Washington, DC 20005
(202) 973-4800
(202) 296-3480 (fax)
richard.muniz@ppfa.org
*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region, Planned Parenthood of Greater Ohio, and Sharon Liner, M.D.*

Melissa Cohen*
Planned Parenthood Federation of America
123 William Street, Floor 9
New York, NY 10038
(212) 541-7800
(212) 247-6811 (fax)
melissa.cohen@ppfa.org
*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region, Planned Parenthood of Greater Ohio, and Sharon Liner, M.D*

Jennifer L. Branch # 0038893
Alphonse A. Gerhardstein # 0032053
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
(513) 621-9100
(513) 345-5543 (fax)
jbranch@gbfirm.com
agerhardstein@gbfirm.com
*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region, Planned Parenthood of Greater Ohio, Sharon Liner, M.D., Women's Med Group Professional Corporation and Capital Care Network of Toledo*

Freda J. Levenson #0045916
American Civil Liberties Union of Ohio Foundation, Inc.
4506 Chester Avenue
Cleveland, OH 44103
(614) 586-1972 x 125
(216) 472-2210 (fax)
flevenson@acluohio.org

11

*Counsel for Plaintiff Preterm-Cleveland*

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 20, 2019, a copy of the foregoing motion was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system. I further certify that a copy of the foregoing motion and Notice of Electronic Filing has been served by ordinary U.S. mail and email upon all parties for whom counsel has not yet entered an appearance.

/s/ B. Jessie Hill  
Trial Attorney for Plaintiffs
