# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 06, 2020

Ms. Brigitte Amiri
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Ms. Jennifer L. Branch
Gerhardstein & Branch
441 Vine Street
Suite 3400
Cincinnati, OH 45202

Ms. Heather L. Buchanan
Office of the Attorney General
30 E. Broad Street
16th Floor
Columbus, OH 43215

Ms. Rachel Citak
Citizens for Community Values
P.O. Box 2945
Columbus, OH 43216

Ms. Carrie Y. Flaxman
Planned Parenthood Federation of America
1110 Vermont Avenue
Suite 300
Washington, DC 20005

Mr. Benjamin Michael Flowers
Office of the Attorney General

30 E. Broad Street
14th Floor
Columbus, OH 43215

Mr. Alphonse A. Gerhardstein
Gerhardstein & Branch
441 Vine Street
Suite 3400
Cincinnati, OH 45202

Ms. Beatrice Jessie Hill
Case Western Reserve University
School of Law
11075 E. Boulevard
Cleveland, OH 44106

Mr. Zachery P. Keller
Office of the Attorney General
30 E. Broad Street
16th Floor
Columbus, OH 43215

Freda Levenson
ACLU of Ohio
4506 Chester Avenue
Cleveland, OH 44103

Mr. Stephen Chad Meredith
Office of the Attorney General
of Kentucky
700 Capitol Avenue
Suite 118
Frankfort, KY 40601

Mr. Richard Muniz
Planned Parenthood Federation of America
1110 Vermont Avenue
Suite 300
Washington, DC 20005

Ms. Elizabeth Watson
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Mr. Edward Lawrence White
American Center for Law and Justice
3001 Plymouth Road
Suite 203
Ann Arbor, MI 48105

                Re:  Case No. 20-3365, *Preterm-Cleveland, et al v. Attorney General of Ohio, et al*
                     Originating Case No. : 1:19-cv-00360

Dear Counsel,

    The Court issued the enclosed (Order/Opinion) today in this case.

                           Sincerely yours,

                           s/Roy G. Ford
                           Case Manager
                           Direct Dial No. 513-564-7016

cc:  Mr. Richard W. Nagel

Enclosure

No mandate to issue

No.  20-3365

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 06, 2020
DEBORAH S. HUNT, Clerk

PRE-TERM CLEVELAND, et al.,                    )
                                               )
      Plaintiffs-Appellees,                 )
                                               )
v.                                             )
                                               )
ATTORNEY GENERAL OF OHIO, et al.,              )                    O R D E R
                                               )
      Defendants-Appellants,                )
                                               )
and                                            )
                                               )
SUPERVISING MEMBER STATE MEDICAL               )
BOARD OF OHIO, et al.                          )
                                               )
      Defendants.                           )


Before:  COLE, Chief Judge; GUY and BUSH, Circuit Judges.


Defendants, the Attorney General of Ohio, the Director of the Ohio Department of Health, and the Secretary of the State Medical Board of Ohio (collectively "the State") appeal the district court's order granting plaintiffs' motion for a temporary restraining order ("TRO").  The plaintiffs are a collection of reproductive healthcare clinics and physicians providing abortion care ("the Providers").  The State moves to stay the TRO pending its appeal and asks that we treat its motion both as a stay motion and as a brief on the merit of its appeal.  The Providers oppose a stay and move for dismissal.  The State replies.

No. 20-3365
-2-

On March 17, 2020, in response to the COVID-19 pandemic, the Director of the Ohio Department of Health issued an order titled "RE: Director's Order for the Management of Non-essential Surgeries and Procedures throughout Ohio." ("Director's Order"). It directs that all non-essential or elective surgeries and procedures that utilize personal protective equipment ("PPE") should not be conducted. A violation of the order is a second-degree misdemeanor. On March 20, 2020, and March 21, 2020, the Providers received letters from the State warning them that if they did not immediately stop performing non-essential or elective surgical abortions in compliance with the Director's Order, the Department of Health would take appropriate measures. The Providers sought a TRO, which the district court granted, in part, on March 30, 2020.

As both parties acknowledge, we must first determine whether we have jurisdiction in this matter. We have jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). We generally lack jurisdiction to hear an appeal of a district court's decision to grant or deny a TRO. "The rationale for this rule is that TROs are of short duration and usually terminate with a prompt ruling on a preliminary injunction, from which the losing party has an immediate right of appeal." *Ne. Ohio Coal. for the Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). However, the label the district court attaches to its order is not controlling, and we will "look[]to the nature of the order and the substance of the proceeding below to determine whether the rationale for denying appeal applies." *Id*. Accordingly, courts have allowed interlocutory appeals of TROs that threaten to inflict irretrievable harms or consequences before the TRO expires or, rather than preserving the status quo, act as a mandatory injunction requiring affirmative action. *Id.* at 1005–06.

No. 20-3365
-3-

The State argues that, at a minimum, the TRO threatens to inflict irretrievable harm because the Director's Order is designed to preserve PPEs for those responding to the COVID-19 pandemic. According to the State, every piece of PPE that the Providers expend on surgical abortions is one that those most in need of such equipment cannot use to protect themselves and may ultimately cause people to die. It suggests that the TRO allows Providers to "risk the public health in order to provide a surgical abortion to anyone who wants one whenever they want it." To the contrary, the TRO is narrowly tailored. The district court held

> that Plaintiff healthcare providers are to determine if a surgical abortion procedure can be safely postponed during the pre-viability stage to maximize healthcare resources to combat the COVID-19 pandemic. If a healthcare provider determines, on a case-by-case basis, that the surgical procedure is medically indicated and cannot be delayed, based on the timing of pre-viability or other medical conditions, said procedure is deemed legally essential to preserve a woman's right to constitutionally protected access to abortions.

The district court has clarified in denying a stay of the TRO that the "case-by-case basis" determination does not permit "blanket 'on-demand provision of elective abortions,'" and that "Plaintiffs may not perform surgical abortions if they can induce the same abortion medicinally or perform abortions that can be delayed without jeopardizing the mother's health, life, or ability to exercise her Fourteenth Amendment right to a pre-viability abortion." With that clarification, we are not persuaded that the TRO threatens to inflict irretrievable harms or consequences before it expires, and it requires no affirmative action by the State. Thus, we lack jurisdiction over this appeal.

One final point bears mentioning. There are multiple forms of surgical abortion, all of which are typically provided in a clinical setting rather than a hospital. The first uses the aspiration method, which can be performed up to approximately 15 weeks measured from the first day of the pregnant woman's last menstrual cycle. It requires no incision, general anesthesia, or sterile field.

No. 20-3365
-4-

After 15 weeks, a second method, called the dilation and evacuation technique, is used and, depending on how far into the pregnancy it is performed, requires more time in the clinic and uses more PPE. The State argues that the intent of the Director's Order is to preserve PPEs in the immediate near-term, "[s]o the fact that the order might require (some) abortionists to use more PPEs weeks or months from now (in some cases) is really beside the point." But it is not beside the point to question whether the Director's Order deprives a woman of her right to an abortion during the optimal 15-week period during which the aspiration method can be performed. A prompt ruling by the district court on the Providers' motion for a preliminary injunction may shed further light on this issue.

Accordingly, the Providers' motion to dismiss is **GRANTED**. The State's motion for a stay is **DENIED** as moot.

BUSH, J., concurring in part and dissenting in part.

I concur with the Majority's decision to deny the State's motion for a stay of the district court's temporary restraining order ("TRO"), but I disagree with their conclusion that we do not have jurisdiction to hear this appeal.

Generally, jurisdiction does not extend to the district court's decision to grant or deny a TRO. *See Ne. Ohio Coal. for Homeless and Serv. Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). However, we have jurisdiction to hear an appeal of a TRO "if it has the practical effect of an injunction and 'further[s] the statutory purpose of permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). Therefore, we have jurisdiction if the restraining order "threaten[s] to inflict irretrievable harm before" it expires. *Id.* at 1005–06. And, a party may appeal the grant of a restraining order if it "does not

merely preserve the status quo pending further proceedings, but rather directs action so potent with consequences so inevitable." *Id.* at 1006.

The Director of the Ohio Department of Health suspended all non-essential surgeries as part of Ohio's measures to combat the spread of COVID-19, and the TRO makes the Director's Order inapplicable to what the State contends is a class of non-essential surgeries. Because, as the Providers concede, surgical abortions require the use of personal protective equipment ("PPE"), *see* Appellees Br. at 6, an entire class of surgical procedures that the State contends are non-essential are now permitted to proceed notwithstanding the Director's Order. This arguably contradicts the Order's purpose of "reserving personal protective equipment . . . and critical hospital capacity and resources within Ohio." R. 48-2 at PageID 984. The State also points out that, under its interpretation of the Director's Order, the TRO does not maintain the status quo, but disrupts it. All other non-essential surgical procedures have been suspended within the state. According to the State, allowing the Providers a blanket exception from the Director's Order would disrupt the status quo and cause significant harm to Ohio's pandemic response. I conclude, therefore, that the State has made a sufficient showing of arguable "irretrievable harm" and disruption of the status quo of the Director's Order, particularly in light of the time-sensitive nature of the issue, to give us jurisdiction to review the TRO. *See Ne. Ohio Coal. for Homeless*, 467 F.3d at 1005–006.

I understand the State's concerns about the need for imposing restrictions on non-essential surgeries to conserve the use of PPE. I also agree with the State that abortion providers are not entitled to special exemptions unavailable to other doctors in determining which procedures are essential. *See Gonzales v. Carhart*, 550 U.S. 124, 163 (2007) ("The law need not give abortion doctors unfettered choice in the course of their medical practice, nor should it elevate their status

above other physicians in the medical community."). However, abortion is a unique medical procedure under both Ohio and federal law because that procedure must be performed within twenty-two weeks (*i.e.*, pre-viability) per an Ohio statute and, under the federal constitution, without undue restrictions on the procedure. No one has the right to "terminate her pregnancy at whatever time, in whatever way, and for whatever reason she alone chooses." *Roe v. Wade*, 410 U.S. 113, 153 (1973). Rather, a woman has a right, before the fetus is viable, not to be unduly burdened in her decision whether to obtain an abortion. A state imposes an undue burden when it enacts abortion regulations that have "the purpose" or the "effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992) (plurality). A state may regulate certain abortion procedures, *Gonzales*, 550 U.S. at 163, or require women to undertake steps that may delay obtaining an abortion, *Casey*, 505 U.S. at 886, so long as the state leaves open reasonably available avenues for obtaining a pre-viability abortion. The onus is on the Providers to make a "clear showing" that the Director's Order violates the Constitution. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

There is no evidence that the Director's Order has the purpose of placing a substantial obstacle for a woman seeking an abortion. Indeed, the Providers do not dispute that the Director's Order does not have the purpose of interfering with the right to an abortion. The Director's Order does not single out abortions or abortion providers; it applies to "*all* non-essential or elective surgeries and procedures[.]" R. 48-2 at PageID 984 (emphasis added). Also, I am not convinced, based on the record as it stands, and in light of the State's interpretation of the Director's Order on appeal, that the Director's Order places a substantial obstacle in the path of a woman seeking an abortion. As the Supreme Court has made clear, states may impose requirements that delay a woman's ability to obtain an abortion, so long as they leave open reasonably available avenues for

exercising the right to a pre-viability abortion. *See Casey*, 505 U.S. at 886. In this regard, the Director's Order may pass constitutional muster if it is applied as the State on appeal has argued it will be applied. Under the State's interpretation, doctors are free to prescribe drugs to induce an abortion in accordance with state law. Further, doctors may still perform surgical abortions if the doctor determines that the abortion is necessary to protect the mother's life or health, or if the doctor determines that any delay will jeopardize the woman's right to obtain an abortion. The Attorney General has specifically noted that the Director's Order will be enforced so as to comply with the strictures of Supreme Court precedent. While the Director's Order may, in some cases, cause a delay in a woman's ability to obtain an abortion, the State may be able to establish that it has left open sufficient channels such that the Order does not impose an undue burden on a woman's right to obtain an abortion.

However, the State did not advance its interpretation of the Director's Order before the district court, despite apparently being given the opportunity in two telephonic conferences to do so. Given these circumstances, and in light of the district court's clarification of the TRO through its order denying the motion for a stay, I do not believe that the district court abused its discretion in maintaining the status quo to the best extent it could until the preliminary injunction could be decided.

Appellees argue that the balance of harms favors them because of health risks to patients who must delay their abortions under the Director's Order. There indeed may be increased health risks from delay, but there are undoubtedly health risks from the delay of *any* medical procedure that may be impacted by the Director's Order. Appellees also argue that more PPEs may be required to be used if abortions are delayed. The State responds that the issue is timing: non-essential medical procedures are being delayed with the expectation that more PPEs will be

manufactured and available when the later procedures are done. The district court will need to weigh these competing contentions. Also, it should consider another significant issue raised by the Providers regarding delay, which is the preference of many women for having the abortion while the aspiration method can be performed, rather than the dilation & evacuation procedure that is required for later abortions. All of these issues would benefit from a more developed record and argument below.

Finally, a word about the proportional impact of the Director's Order on the supply of PPEs: It could be argued that the number of PPEs used in pre-viability surgical abortions is negligible compared to the number of PPEs used in all medical procedures, and therefore, the Director's Order as applied to abortion providers does not help preserve PPEs in a substantial way. But, if abortion providers are permitted to decide on an ad hoc basis whether a surgical abortion should be performed, who is to say that doctors who perform other medical procedures affected by the Director's Order could not argue that they should also be permitted to continue performing these procedures as they see fit? This would constitute a serious free-rider problem, the likes of which the Supreme Court has looked upon with disfavor in cases involving state action during pandemics. *See Jacobson*, 197 U.S. at 35 ("[T]hose who had no faith in vaccination as a mean of preventing the spread of smallpox . . . put in peril the health of the person vaccinated.").

These issues should be addressed promptly by the district court in ruling on the motion for preliminary injunction. But, given the development of the factual record to date, the State's delay in articulating its interpretation of the Director's Order until it had appealed to this court, and the

No. 20-3365

-9-

district court's recent clarification of the scope of the TRO, I do not believe that the State has made

a sufficient showing to reverse the TRO.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk